IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| **JAMES B. WOLFF**, | Case No. 3:21-cv-880-SI |
| Plaintiff, | **OPINION AND ORDER** |
| v. | |
| **TOMAHAWK MANUFACTURING**, | |
| Defendant. | |

Michael J. Morris, BENNETT HARTMAN LLP, 210 SW Morrison St., Suite 500, Portland, OR 97204. Of Attorney for Plaintiff James B. Wolff.

Aaron J. Porter and Michael G. Jacobs, HART WAGNER LLP, 1000 SW Broadway, Portland, OR 97205; Thomas C. Koessl and Ashleigh A. Stochel, L&G LAW GROUP LLP, Chicago, IL 60610. Of Attorneys for Defendant Tomahawk Manufacturing.

**Michael H. Simon, District Judge.**

James B. Wolff (Wolff) brings this lawsuit alleging multiple claims against Tomahawk

Manufacturing (Tomahawk). At issue is Wolff's claim for injunctive relief (Count One) to enjoin

Tomahawk's alleged continuing breach of the parties' 2010 Confidentiality Agreement (the 2010

NDA). Tomahawk moves the Court to dismiss Count One pursuant to Rule 12(b)(1) of the

Federal Rules of Civil Procedure for lack of subject matter jurisdiction, or in the alternative,

moves to stay this claim and compel Wolff to arbitrate pursuant to the arbitration provision

contained in a subsequent contract. For the reasons discussed below, Tomahawk's motion and alternative motion are DENIED.[1]

## STANDARDS

### A.  Motion to Dismiss Based on Lack of Subject Matter Jurisdiction

Federal courts are courts of limited jurisdiction. *Gunn v. Minton*, 568 U.S. 251, 256 (2013) (quotation marks omitted). As such, a court is to presume "that a cause lies outside this limited jurisdiction, and the burden of establishing the contrary rests upon the party asserting jurisdiction." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994) (citations omitted); *see also Robinson v. United States*, 586 F.3d 683, 685 (9th Cir. 2009); *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004). A motion to dismiss under Rule 12(b)(1) of the Federal Rules of Civil Procedure for lack of "subject-matter jurisdiction, because it involves a court's power to hear a case, can never be forfeited or waived." *United States v. Cotton*, 535 U.S. 625, 630 (2002). An objection that a particular court lacks subject matter jurisdiction may be raised by any party, or by the court on its own initiative, at any time. *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 506 (2006); Fed. R. Civ. P. 12(b)(1). The Court must dismiss any case over which it lacks subject matter jurisdiction. Fed. R. Civ. P. 12(h)(3); *see also Pistor v. Garcia*, 791 F.3d 1104, 1111 (9th Cir. 2015) (noting that when a court lacks subject-matter jurisdiction, meaning it lacks the statutory or constitutional power to adjudicate a case, the court must dismiss the complaint, even *sua sponte* if necessary).

A Rule 12(b)(1) motion to dismiss for lack of subject matter jurisdiction may be either "facial" or "factual." *See Safe Air for Everyone*, 373 F.3d at 1039. A facial attack on subject

---

[1] Notwithstanding Tomahawk's request for oral argument, the Court does not believe that oral argument would assist in resolving the pending motion and alternative motion. *See* LR 7-1(d)(1).

matter jurisdiction is based on the assertion that the allegations contained in the complaint are insufficient to invoke federal jurisdiction. *Id.* "A jurisdictional challenge is factual where 'the challenger disputes the truth of the allegations that, by themselves, would otherwise invoke federal jurisdiction.'" *Pride v. Correa*, 719 F.3d 1130, 1133 n.6 (9th Cir. 2013) (quoting *Safe Air for Everyone*, 373 F.3d at 1039)). When a defendant factually challenges the plaintiff's assertion of jurisdiction, a court does not presume the truthfulness of the plaintiff's allegations and may consider evidence extrinsic to the complaint. *See Terenkian v. Republic of Iraq*, 694 F.3d 1122, 1131 (9th Cir. 2012); *Robinson*, 586 F.3d at 685; *Safe Air for Everyone*, 373 F.3d at 1039. A factual challenge "can attack the substance of a complaint's jurisdictional allegations despite their formal sufficiency." *Dreier v. United States*, 106 F.3d 844, 847 (9th Cir. 1996) (citation and quotation marks omitted).

**B.  Motion to Compel Arbitration**

The Federal Arbitration Act (FAA), 9 U.S.C. §§ 1-15, applies to all contracts involving interstate commerce and specifies that "written agreements to arbitrate controversies arising out of an existing contract 'shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.'" *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218 (1985) (quoting 9 U.S.C. § 2). The text of the FAA "leaves no place for the exercise of discretion by a district court," but instead "mandates that district courts *shall* direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed." *Id.* at 218 (citing 9 U.S.C. §§ 3-4) (emphasis in original). The district court must limit itself "to determining (1) whether a valid agreement to arbitrate exists and, if it does, (2) whether the agreement encompasses the dispute at issue." *Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1130 (9th Cir. 2000).

Under the FAA, "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Moses H. Cone Mem'l Hosp. v. Mercury Const. Corp.*, 460 U.S. 1, 24-25 (1983). However, the "liberal federal policy regarding the scope of arbitrable issues is inapposite" to the question whether a particular party agreed to the arbitration agreement. *Comer v. Micor, Inc.*, 436 F.3d 1098, 1104 n.11 (9th Cir. 2006). The validity of an arbitration agreement remains "a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." *AT & T Technologies, Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 648 (1986). Because arbitration is fundamentally "a matter of contract," the FAA "places arbitration agreements on an equal footing with other contracts and requires courts to enforce them according to their terms." *Rent-A-Ctr., W., Inc. v. Jackson*, 561 U.S. 63, 67 (2010) (citations omitted). Courts also should generally "apply ordinary state-law principles that govern the formation of contracts" to determine whether the parties agreed to arbitrate. *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995).

Unless there is "clear and unmistakable evidence" that the parties agreed that an arbitrator should decide issues of arbitrability, "before referring a dispute to an arbitrator, the court determines whether a valid arbitration agreement exists." *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 139 S. Ct. 524, 530 (2019); *see also First Options of Chicago*, 514 U.S. at 944 (noting that the Supreme Court has "added an important qualification, applicable when courts decide whether a party has agreed that arbitrators should decide arbitrability: Courts should not assume that the parties agreed to arbitrate arbitrability unless there is clear and unmistakable evidence that they did so"); *Three Valleys Mun. Water Dist. v. E.F. Hutton & Co.*, 925 F.2d 1136, 1140-41 (9th Cir. 1991) (stating that a court, not an arbitrator must decide "the threshold issue of the existence of an agreement to arbitrate"). In deciding whether an agreement to arbitrate exists, a court should apply a summary-judgment-style standard. "Only when there is

no genuine issue of fact concerning the formation of the agreement" should the court decide as a matter of law that an agreement to arbitrate exists. *Three Valleys*, 925 F.2d at 1141 (quoting *Par-Knit Mills, Inc. v. Stockbridge Fabrics Co.*, 636 F.2d 51, 54 (3d Cir. 1980)).

The district court should give the party opposing a motion to compel arbitration "the benefit of all reasonable doubts and inferences that may arise." *Id.* The party seeking to compel arbitration bears "the burden of proving the existence of an agreement to arbitrate by a preponderance of the evidence." *Knutson v. Sirius XM Radio Inc.*, 771 F.3d 559, 565 (9th Cir. 2014). When "the making of the arbitration agreement" is at issue, "the court shall proceed summarily to the trial thereof." 9 U.S.C. § 4. "The court shall hear and determine such issue" if the party alleged to be in violation of the agreement does not demand a jury trial. *Id.*

## BACKGROUND

Tomahawk manufactures processing equipment, parts, and tooling and also provides related service support for the meat forming industry. Tournour Decl., at ¶ 4 (ECF 35). Wolff and Tomahawk met when Wolff worked for an employer that used machines and equipment supplied by Tomahawk. Wolff Decl., at ¶¶ 1-2 (ECF 29). Wolff invented and developed various technologies related to the functioning and production of machines used in the meat forming and processing industry. Am. Compl. ¶ 2 (ECF 15). In 2010, Wolff and Tomahawk began discussions about a prospective licensing agreement between the parties for Wolff's technologies. Am. Compl. ¶ 4. Wolff, in his individual capacity, and Tomahawk entered into the 2010 NDA on November 2, 2010. Wolff Decl., at Ex. 1.

In November 2011, the parties formed multiple business entities in anticipation of the business venture. Wolff formed Spherical IP, LLC (Spherical) and Spherical Innovations, LLC (Spherical Innovations). *Id.* at ¶ 7. The purpose of Spherical was to receive the revenues generated by Wolff's "Fiber Oriented Technology" (FOT), which is technology that causes a

realignment of the meat fibers, resulting in a better meat patty. *Id.* at ¶¶ 6-8. Eight days later, Tomahawk organized Formtec, LLC (Formtec) to apply for, obtain, and exploit patents for the use of FOT in the meat-forming industry. *Id.* at ¶ 7. In December 2011, the parties entered into a series of Confidentiality Agreements between the various business entities: Spherical and Formtec, Spherical and Spherical Innovations, and Spherical Innovations and Tomahawk executed agreements. *Id.* The substantive provisions of these Confidentiality Agreements (the 2011 NDAs) used identical language to the 2010 NDA (collectively, Signed NDAs). Tournour Decl., at ¶ 17.

The Signed NDAs defined "confidential information" as

> all information provided by the Disclosing Party to the Receiving
> Party related to business programs, products, applications, systems,
> components, technologies and business topics including but not
> limited to written, oral, audio tapes, video tapes, computer discs,
> machines, prototypes, designs, specifications, articles of
> manufacture, drawings, human or machine readable documents.

Wolff Decl., at Ex. 1. The Signed NDAs also stated that confidential information "shall not include any of the following": information in the public domain at the time of disclosure, information in Tomahawk's possession and not acquired from Wolff, and information Tomahawk acquired from a third party. *Id.*

On September 11, 2012, Formtec and Spherical signed an agreement relating to FOT (FOT Agreement). Wolff Decl. ¶ 8; ECF 25-2. The FOT Agreement elaborates on the rights and responsibilities of Formtec and Spherical and establishes payment terms for revenues generated by Formtec's FOT patents. ECF 25-2. The FOT Agreement also contains confidentiality and governing law and venue clauses. *See id.* at 3-4. The confidentiality clause states

> This Agreement and all terms and conditions in this Agreement
> shall be kept confidential by both parties for the term of this
> Agreement. The parties have signed several NDAs for all work
> relating to the Technology [FOT]. These NDAs shall be a principle

[sic] part of this Agreement, and shall be binding upon the Parties. Such confidentiality provisions shall survive the termination of this Agreement[.]

*Id.* at 3. The governing law and venue clause selects Wisconsin law to govern construction and interpretation of the FOT Agreement and states, "[b]oth Parties have agreed that any legal dispute regarding this Agreement shall be resolved via Binding Arbitration under the rules of the American Arbitration Association." *Id.* at 4.

During the next few years, the working relationship between Wolff and Tomahawk took various forms. Tomahawk retained Wolff as a consultant starting in 2008. Wolff Decl., at ¶ 3. Wolff consulted for Tomahawk until Tomahawk formally employed Wolff as R&D Engineering Support in 2017. *Id.* ¶ 10. Wolff's employment with Tomahawk was terminated in March 2021. *Id.* Two months later, Wolff demanded that Tomahawk return Wolff's confidential information, and alleges that Tomahawk refused to do so. *Id.*

Wolff sued in state court, alleging multiple claims against Tomahawk. Tomahawk removed this case to federal court shortly thereafter. Wolff's lawsuit alleges a breach of the 2010 NDA, whistleblower retaliation in violation of Oregon Revised Statutes (ORS) § 659A.199, and disability discrimination in violation of ORS § 659A.112. *See* Am. Compl. (ECF 15). Formtec, in response to the initiation of Wolff's suit, made a Commercial Demand for Arbitration with the American Arbitration Association in Wisconsin against Spherical for a breach of the FOT Agreement. *See* ECF 25-3. Spherical alleged counterclaims against Formtec in its arbitration answering statement. *See* ECF 25-4.

Before the Court is Tomahawk's Motion to Dismiss Count One of Wolff's Amended Complaint for lack of subject matter jurisdiction. Alternatively, Tomahawk moves to stay this claim and compel Wolff to arbitrate Count One.

**DISCUSSION**

Tomahawk argues that the 2010 NDA that Wolff seeks to enforce was integrated into the later FOT Agreement, which contains an arbitration provision. Tomahawk argues that a motion to compel arbitration is appropriately raised pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure for lack of subject matter jurisdiction. Alternatively, Tomahawk asserts that because the FOT Agreement incorporates the Signed NDAs, the pending dispute regarding the use of confidential information is properly resolved in arbitration under the FOT Agreement's arbitration provision. The Court addresses each of these arguments below.

## A.  Motion to Dismiss Based on Lack of Subject Matter Jurisdiction

Tomahawk asserts that a motion to dismiss under Rule 12(b)(1) is the appropriate method to compel arbitration. In support of this contention, Tomahawk cites *Riso, Inc. v. Witt Co.*, 2014 WL 3371731, at *4 (D. Or. July 9, 2014) (citing *Geographic Expeditions, Inc. v. Estate of Lhotka*, 599 F.3d 1102, 1104 (9th Cir. 2010)). In *Riso, Inc.*, U.S. District Court Judge Marco A. Hernández explained that the FAA removes the court's subject matter jurisdiction to hear the claim when there is a valid, enforceable arbitration clause. *Id.* Thus, Judge Hernández found that the motion to dismiss under Rule 12(b)(1) was in effect a petition within the meaning of § 4 of the FAA. *Id.*

Some federal courts have allowed a motion to compel arbitration based on a valid and enforceable agreement to arbitrate to be brought under Rule 12(b)(1), asserting a lack of subject matter jurisdiction. The Court declines to apply this approach. As noted, if a federal court lacks subject matter jurisdiction, such a defect can never be waived. *United States v. Cotton*, 535 U.S. at 630. Yet, it is not uncommon, or at least not unthinkable, that parties to a mandatory arbitration agreement mutually decide to waive arbitration and pursue resolution of their dispute in federal court, assuming that either federal question or diversity jurisdiction otherwise exists.

There is also a significant and consistent body of case law holding that if a party, whether a plaintiff or a defendant, continues in a lawsuit long enough and takes advantage of the procedural benefits of civil litigation, that party may be found to have waived its right to stay or dismiss the lawsuit in favor of arbitration, despite the existence of a valid and binding agreement to arbitrate. *See, e.g.*, *Martin v. Yasuda*, 829 F.3d 1118, 1126 (9th Cir. 2016) (holding that the party seeking arbitration had waived the right to arbitrate after spending seventeen months litigating the case); *Van Ness Townhouses v. Mar Indus. Corp.*, 862 F.2d 754, 759 (9th Cir. 1988) (holding that a party had waived its right to arbitrate when it answered complaints, moved to dismiss the action, and did not assert in its pleadings a right to arbitrate). If, however, the existence of an agreement to arbitrate divested a federal court of subject matter jurisdiction, these holdings would not be possible.

The Court also considers the situation of two parties who have a binding agreement to arbitrate. If, despite their agreement to arbitrate, they participated in a lawsuit to its final conclusion at trial, the losing party might appeal and, on appeal, argue that the lower court's adverse judgment should be reversed and vacated based on a lack of subject matter jurisdiction. *See Arbaugh*, 546 U.S. at 506 (holding that an objection that a particular court lacks subject matter jurisdiction may be raised by any party, or by the court on its own initiative, at any time). One response to this possibility would be to say that litigating a dispute in court notwithstanding an agreement to arbitrate is an implicit "termination" of the agreement. But if the mere existence of an agreement to arbitrate divests a federal court of subject matter jurisdiction, then such an implicit termination of the agreement would appear to violate the rule that a court's lack of subject matter jurisdiction can never be waived.

Although the Ninth Circuit has not yet expressly ruled on whether a motion to dismiss based on a binding arbitration clause is subject to a motion brought under Rule 12(b)(1),[2] other circuits have addressed this issue. *See Baker v. Iron Workers Loc. 25 Vacation Pay Fund*, 999 F.3d 394, 400 (6th Cir. 2021) ("Because an arbitration agreement presents a reason to dismiss under 12(b)(6), not under 12(b)(1), the court should have dismissed the case for failure to state a claim."); *Dylan 140 LLC v. Figueroa as Tr. of Bldg. Serv. 32BJ Health Fund*, 982 F.3d 851, 855 (2d Cir. 2020) (rejecting argument under rule 12(b)(1) because "the court did have federal question jurisdiction"); *City of Benkelman, NE v. Baseline Eng'g Corp.*, 867 F.3d 875, 881 (8th Cir. 2017) (holding that a binding arbitration clause does not strip federal courts of jurisdiction and concluding that the district court erred in construing motion to enforce arbitration clause as a Rule 12(b)(1) challenge to subject matter jurisdiction); *Auto. Mech. Local 701 v. Vanguard Car Rental*, 502 F.3d 740, 743 (7th Cir. 2007) ("Enforcement of a forum selection clause (including an arbitration clause) is not jurisdictional. . . ."); *but see Gilbert v. Donahoe*, 751 F.3d 303, 306 (5th Cir. 2014) ("[A] district court lacks subject matter jurisdiction over a case and should dismiss it pursuant to Federal Rule of Civil Procedure 12(b)(1) when the parties' dispute is subject to binding arbitration."). Additionally, district courts, including this Court, have questioned whether the issue of arbitrability of claims is jurisdictional. *See Dodo Int'l Inc. v. Parker*, 2021 WL 4060402, at *5 (W.D. Wash. Sept. 7, 2021) ("Donion seeks dismissal for lack

---

[2] In its motion, Tomahawk refers to *Riso, Inc.*, which cites *Geographic Expeditions, Inc.*, for the proposition that a motion to compel arbitration is appropriately raised in a motion pursuant to Rule 12(b)(1). In *Geographic Expeditions*, however, the Ninth Circuit reversed the district court's dismissal for lack of subject matter jurisdiction and held that an arbitration agreement's liability cap, which was less than $75,000, did not preclude diversity jurisdiction. 559 F.3d at 1107-08. The Court is not persuaded that *Geographic Expeditions* answers the question before the Court: whether a motion pursuant to Rule 12(b)(1) is the appropriate mechanism to compel arbitration as to Count One of Wolff's Amended Complaint.

of subject matter jurisdiction based on an arbitration clause in his engagement letter with Plaintiffs. Rule 12(b)(1) is not the way to enforce such a clause." (citation omitted)); *Pinkerton Tobacco Co., LP v. The Art Factory AB*, 2021 WL 541441, at *4 (C.D. Cal. Jan. 28, 2021) ("To begin, it is not clear that the Rule 12(b)(1) motion, which seeks dismissal on the basis of an arbitration clause, is procedurally proper."); *Munger v. Cascade Steel Rolling Mills, Inc.*, 332 F. Supp. 3d 1280, 1286-88 (D. Or. 2018) ("Without further direction from the Ninth Circuit, I join the Seventh and Eighth Circuits and hold that enforcement of an arbitration clause is not jurisdictional and thus not properly the subject of a motion to dismiss under Rule 12(b)(1)."); *Minn. Supply Co. v. Mitsubishi Caterpillar Forklift Am., Inc.*, 822 F. Supp. 2d 896, 904-05 n.10 (D. Minn. 2011) ("To dismiss a federal action for lack of subject matter jurisdiction *because* the dispute is subject to a binding arbitration agreement mistakenly assumes that an arbitrable dispute, by definition, falls outside the realm of federal jurisdiction. Moreover, the fact that the parties have contractually agreed to resolve any particular dispute by arbitration says nothing about whether that dispute would satisfy federal question, diversity or any other basis of subject matter jurisdiction." (emphasis in original)). Without further direction from the Ninth Circuit, the Court continues to hold enforcement of an arbitration clause is not jurisdictional and thus not properly the subject of a motion to dismiss under Rule 12(b)(1).

If two parties enter into a binding agreement to arbitrate and then one party begins a federal lawsuit in breach of that agreement, the other party must have some procedural vehicle available to dismiss or stay the litigation. Just as the proper vehicle is not a motion to dismiss for lack of subject matter jurisdiction, it also is not a motion to dismiss for improper venue under Rule 12(b)(3). *See Munger*, 332 F. Supp. 3d at 1287-88. In *Atlantic Marine Construction Company v. U.S. District Court for the Western District of Texas*, the Supreme Court stated: "Rule 12(b)(3) allow[s] dismissal only when venue is 'wrong' or 'improper.' Whether venue is

'wrong' or 'improper' depends exclusively on whether the court in which the case was brought satisfies the requirements of federal venue laws, and those provisions say nothing about a forum-selection clause." 571 U.S. 49, 55 (2013). As the Eighth Circuit concluded based on *Atlantic Marine*, "to the extent an arbitration provision is like a forum-selection clause, the motion seeking to compel arbitration is not properly construed under Rule 12(b)(3)." *City of Benkelman*, 867 F.3d at 880.

Similarly, a motion to dismiss under Rule 12(b)(6) for failure to state a claim does not appear to be a particularly viable solution. *See Munger*, 332 F. Supp. 3d at 1288. A plaintiff who brings a federal lawsuit, invoking either federal question or diversity jurisdiction, notwithstanding a binding agreement to arbitrate is unlikely to include, incorporate, or even refer to the arbitration clause. If the document containing an agreement to arbitrate is not otherwise incorporated into the complaint,[3] then the defendant who seeks to rely on the arbitration agreement must present that agreement as a matter outside the pleadings. In that event, however, a motion to dismiss would be improper and, if the outside material is not stricken, "the motion must be treated as one for summary judgment under Rule 56." Fed. R. Civ. P. 12(d).

The usual method to enforce an arbitration agreement subject to the FAA is a motion to compel arbitration under the FAA. *See* 9 U.S.C. § 4 ("A party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition any United States district court which, save for such agreement, would have jurisdiction under

---

[3] There may be circumstances, such as in a diversity case alleging breach of contract, when the plaintiff's reference to the contract will be sufficient to incorporate the entire agreement without converting the motion to dismiss to a motion for summary judgment, even if the plaintiff did not attach it to its complaint. *See* Fed. R. Civ. P. 10(c) ("A copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes"); *see generally Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 998-1005 (9th Cir. 2018).

title 28, in a civil action or in admiralty of the subject matter of a suit arising out of the controversy between the parties, for an order directing that such arbitration proceed in the manner provided for in such agreement."). Although generally this involves a motion to stay the federal court case under § 3 of the FAA and compel arbitration, "[t]here is a growing trend among courts favoring dismissal of a case when all of the claims contained therein are subject to arbitration—resulting in 'a judicially-created exception to the general rule which indicates district courts may, in their discretion, dismiss an action rather than stay it where it is clear the entire controversy between the parties will be resolved by arbitration.'" *Johnson v. Orkin, LLC*, 928 F. Supp. 2d 989, 1008 (N.D. Ill. 2013), *aff'd*, 556 F. App'x 543 (7th Cir. 2014) (quoting *Green v. SuperShuttle Int'l, Inc.*, 653 F.3d 766, 769-70 (8th Cir. 2011)).

Additionally, a motion for summary judgment under Rule 56 remains as a vehicle to enforce a valid and binding arbitration clause. When a party files such a motion, a court can determine whether there are any genuine disputes of material fact sufficient to question the binding and enforceable nature of the agreement to arbitrate. In light of the Court's authority under Rules 16, 26, and 56 to control the nature, extent, and timing of discovery and other motion practice in civil litigation, the Court can effectively and efficiently resolve by summary judgment a dispute over whether to enforce a purportedly binding agreement to arbitrate.

Considering a motion to enforce an arbitration agreement under Rule 56 also is consistent with analyzing a motion to compel arbitration under the FAA. Under the FAA, "the district court's order to arbitrate is in effect a summary disposition of the issue of whether or not there had been a meeting of the minds on the agreement to arbitrate," and thus consideration of a motion to compel arbitration according to the "standard used by district courts in resolving summary judgment motions pursuant to Fed. R. Civ. P. 56(c) . . . is appropriate." *Par-Knit Mills, Inc. v. Stockbridge Fabrics Co., Ltd.*, 636 F.2d 51, 54 & n. 9 (3d Cir. 1980). Therefore, even

when "styled as a motion to dismiss, in a motion to stay proceedings and/or compel arbitration, the appropriate standard of review for the district court is the same standard used in resolving summary judgment motions pursuant to Fed. R. Civ. P. 56(c)." *Brown v. Dorsey & Whitney, LLP.*, 267 F. Supp. 2d 61, 67 (D.D.C. 2003) (quoting *Technetronics v. Leybold-Geaeus GmbH*, 1993 WL 197028, at *2 (E.D. Pa. 1993)).

Until either the Ninth Circuit or the Supreme Court addresses this issue further, or until there is an amendment to the rules, this approach seems best, at least to this Court. Accordingly, the Court denies Tomahawk's motion to dismiss for lack of subject matter jurisdiction.[4]

## B. Motion to Compel Arbitration

In the alternative, Tomahawk moves the Court to compel Wolff to arbitrate Count One. Tomahawk contends that this claim arises out of the FOT Agreement because the FOT Agreement incorporates by reference the earlier NDAs. Wolff disputes that the 2010 NDA was incorporated by reference into the FOT Agreement and alleges Count One arises out of the 2010 NDA, which has no arbitration provision. Resolution of these issues requires interpretating and construing the FOT Agreement and the Signed NDAs. All contracts specify that Wisconsin law governs the interpretation of the contracts. Thus, the Court will apply Wisconsin substantive law for its interpretation of the contracts and in its determination of the arbitrability of Count One.

Because Wisconsin arbitration statutes are patterned after the FAA, Wisconsin courts may consider federal court interpretations of the federal statutes on arbitration as an aid in the resolution of interpretation of the Wisconsin Arbitration Act. *Riley v. Extendicare Health Facilities, Inc.*, 345 Wis. 2d 804, 816, n.4 (Wis. Ct. App. 2012). "Arbitration agreements are a

---

[4] Because Tomahawk moves in the alternative to compel arbitration, the Court does not convert Tomahawk's motion to dismiss to a motion for summary judgment.

matter of contract." *Midwest Neurosciences Assoc., LLC v. Great Lakes Neurosurgical Assoc.,*

*LLC*, 384 Wis. 2d 669, 694 (2018). "[A]s such, no party can be required to submit to arbitration

any dispute to which he or she has not agreed." *Cirilli v. Country Ins. & Fin. Services*, 322

Wis. 2d 238, 249 (Wis. Ct. App. 2009). Under Wisconsin law, when determining whether a

dispute is arbitrable a "court's function is limited to a determination of whether: (1) there is a

construction of the arbitration clause that would cover the grievance on its face and (2) whether

any other provision of the contract specifically excludes it." *Id.* at 250. "A court should order

arbitration 'only where the court is satisfied that neither the formation of the parties' arbitration

agreement *nor* . . . its enforceability or applicability to the dispute is in issue." *Midwest*

*Neurosciences Assoc.*, 384 Wis. 2d at 695-96 (quoting *Granite Rock Co. v. Int'l Bhd. of*

*Teamsters*, 561 U.S. 287, 299 (2010) (emphasis in original)).

### 1. Incorporation by Reference

The parties agree that the FOT Agreement contains a valid arbitration clause and that

the 2010 NDA does not. The parties, however, dispute whether the FOT Agreement is the sole

agreement that governs the parties' contractual relationship. Wolff alleges in Count One that

Tomahawk breached and continues to breach the terms of the 2010 NDA, and Tomahawk asserts

that this claim must be arbitrated because the 2010 NDA was incorporated into the later FOT

Agreement. Tomahawk relies heavily on the argument that the FOT Agreement's confidentiality

clause incorporated by reference the Signed NDAs into the FOT Agreement. Wolff responds that

the FOT Agreement's confidentiality clause instead recognizes the continuing operation of the

Signed NDAs, and argues that if the NDAs were truly "superseded"[5] they would not "be binding

upon the Parties" and would not survive termination of the FOT Agreement.

---

[5] The parties dispute the correct characterization of Tomahawk's argument. Tomahawk
characterizes the signed NDAs as "integrated" into the FOT Agreement and at other times states

The FOT Agreement's confidentiality clause states:

> This Agreement and all terms and conditions in this Agreement
> shall be kept confidential by both parties for the term of this
> Agreement. The parties have signed several NDAs for all work
> relating to the Technology [FOT]. These NDAs shall be a principle
> [sic] part of this Agreement, and shall be binding upon the Parties.
> Such confidentiality provisions shall survive the termination of this
> Agreement[.]

ECF 25-2, at 3.

"The great majority of states, including Wisconsin, have accepted the doctrine of incorporation by reference." *In re Brandenburg's Estate*, 13 Wis. 2d 217, 226 (1961). Under an incorporation by reference theory, mere reference to another contract or document is not sufficient to incorporate its terms into a contract. *Gupta v. Morgan Stanley Smith Barney, LLC*, 934 F.3d 705, 715 (7th Cir. 2019). There must be an express intent to incorporate. *Id.* Terms incorporated by reference within the contract (but which the contract does not define) do not create an ambiguity. *Matthews v. Wis. Energy Corp. Inc.*, 534 F.3d 547, 554 (7th Cir. 2008). Instead, so long as the extrinsic terms are clearly identifiable, the parties agree to abide by those terms just as they agree to the other terms in the contract. *Id.*

---

that the Signed NDAs were "incorporate[d]" into the FOT Agreement. *See* ECF 25, at 2, 6. Wolff contends that Tomahawk "confuses the concepts of integration and supersession." ECF 28, at 9. Tomahawk, in its reply brief, argues that it is Wolff that "blends the concepts of 'integration' and 'supersession.'" ECF 34, at 3 n.1. Tomahawk states that the "FOT Agreement does not supersede the prior confidentiality agreements. Rather, the FOT Agreement, 2010 Confidentiality Agreement, and 2011 Confidentiality Agreements are integrated into one single agreement governing the relationships of the parties with respect to the FOT." *Id.* Thus, the Court analyzes the contracts under a theory of incorporation-by-reference. Despite Tomahawk's denial, for its theory that the FOT Agreement serves as the single agreement for all entities and persons involved in the relationship governed by the all the various agreements, including the nonsignatories of the FOT Agreement, the FOT Agreement would have had to have superseded, or replaced, all of the Signed NDAs. Tomahawk, however, does not provide evidence or argument for such a contention.

The FOT Agreement is clear that its signers intended to incorporate "several NDAs" into the confidentiality provision. This intention is evidenced by the FOT Agreement's mandatory phrasing that the Signed NDAs "*shall* be a principle [sic] part of this Agreement, and *shall* be binding upon the Parties." ECF 25-2, at 3 (emphasis added); *see Ready v. GGNSC Holdings, LLC*, 2013 WL 12182387, at *2 (Wis. Ct. App. May 9, 2013) (concluding the use of mandatory language as "shall" and "exclusively" demonstrates the parties' intent). Although the Signed NDAs were not defined in the FOT Agreement (as Wolff points out), the FOT Agreement clearly identifies the documents that were to be incorporated. Further, each party had access to, and knowledge of, the terms in the Signed NDAs. Thus, the Court determines that there is the requisite intent to incorporate the Signed NDAs into the FOT Agreement.

Wolff cites *Rosenblum v. Travelbyus.com Ltd.*, 299 F.3d 657, 664-65 (7th Cir. 2002), for the proposition that an agreement that references other documents may "simply assure[] the continuing vitality of those documents" without incorporating the referenced documents. The agreements in *Rosenblum*, however, are distinguishable in several respects from the agreements here. First, the court in *Rosenblum* characterized the two agreements as "necessary, but self-contained" components of a comprehensive transaction. *Id.* The court clarified it that was clear when looking at the two contracts, "[o]ne contract may be fully performed while the other is breached." *Id.* Here, the FOT Agreement necessarily is breached if there is a breach of the Signed NDAs, because of the binding nature of the Signed NDAs as incorporated by reference into the FOT Agreement. Second, the court in *Rosenblum* supported its conclusion that the agreements were "self-contained" by explaining that "both contracts are complete on their own. *There are no terms missing from either contract that must be filled in with borrowed terms from the other*." *Id.* (Emphasis added). Here, the FOT Agreement expressly leaves terms missing that must be supplied by the terms of the Signed NDAs. The contracts before the Court are factually

distinct from those discussed in *Rosenblum*, and the distinctions support a finding that the references to the Signed NDAs in the FOT Agreement were intended to incorporate the Signed NDAs into the FOT Agreement.

A determination that the FOT Agreement incorporated by reference the Signed NDAs into the terms of its confidentiality provision, however, does not end the inquiry into whether Wolff may be compelled to arbitrate his claim of a breach of the 2010 NDA. Tomahawk argues that because the Signed NDAs were incorporated into the FOT Agreement, the NDAs ceased to have independent legal effect. The Court does not agree with Tomahawk's assessment.

Tomahawk's argument assumes that incorporating the Signed NDAs into the terms of the FOT Agreement's confidentiality clause results in a modification of the terms of the Signed NDAs for the parties to those agreements. Wisconsin law does not support this reading of the doctrine of incorporation by reference. *See Home Bank v. Becker*, 48 Wis.2d 1, 9 (1970) ("The phrase 'incorporated by reference' has the legal effect of making the document so referred to *part of the principal document* so that both are to be read together as one." (emphasis added)). Standing alone, a later contract's incorporation by reference of the terms of an earlier contract or document does not strip the earlier contract of its independent legal effect or otherwise alter the terms of the earlier contract, absent an express statement to that effect. It merely means that the earlier contract or its specific terms that have been incorporated are also part of the later contract. This is particularly true when the contracts involve different contracting parties.

## 2.  The Effect of the FOT Agreement's Merger Clause

Tomahawk argues that the parties intended for a single agreement, the FOT Agreement, to govern the relationship of the parties, as demonstrated by the merger clause contained in the FOT Agreement. The merger clause states: "All of the terms, covenants and conditions of this Agreement between the Parties relating to the obligations of the Parties and the relationship of

the Parties are set forth in this Agreement and there are no other warranties, obligations, covenants, or understandings between the Parties." ECF 25-2, at 5.

A contract that represents the final and complete expression of the parties' agreement is considered fully integrated. *See Town Bank v. City Real Estate Dev., LLC*, 330 Wis. 2d 340, 358 (2010). A fully integrated contract implicates the parol evidence rule and bars the introduction of prior agreements between the parties as evidence of the parties' intent:

> When the parties to a contract embody their agreement in writing and intend the writing to be the final expression of their agreement, the terms of the writing may not be varied or contradicted by evidence of any prior written or oral agreement in the absence of fraud, duress, or mutual mistake.

*Id.* at 357-58 (quoting *In re Spring Valley Meats, Inc.*, 94 Wis.2d 600, 607 (1980)). Extrinsic evidence, however, "is admissible to show whether the parties intended to assent to the writing as the final and complete (or partial) statement of their agreement." *Fed. Dep. Ins. Corp. v. First Mortg. Invs.*, 76 Wis. 2d 151, 158 (1977).

Here, the FOT Agreement's merger clause provides strong evidence that the signers to that agreement's intended to have the FOT Agreement govern the entirety of their relationship. Other text contained in the FOT Agreement, however, supports an alternative reading that undermines the merger clause's effect and makes the plain language of portions of the FOT Agreement ambiguous. The FOT Agreement's confidentiality clause states: "The parties have signed several NDAs for all work relating to the [FOT]. These NDAs shall be a principle [sic] part of this Agreement, and shall be binding upon the Parties. Such confidentiality provisions shall survive the termination of this Agreement." ECF 25-2, at 3. This clause arguably contradicts the plain language of the merger clause, which asserts that there are no other warranties, obligations, covenants or understandings between the parties.

In cases where the contract is incomplete and only part of the agreement is contained in the language of the contract, Wisconsin courts recognize the doctrine of partial integration. *Fed. Dep. Ins. Corp.*, 76 Wis. 2d at 157. When "a writing is shown to be only a partial integration of the agreement reached by the parties, it is proper to consider parol evidence which establishes the full agreement, subject to the limitation that such parol evidence does not conflict with the part that has been integrated in writing." *Id.* (quoting *Morn v. Schalk,* 14 Wis. 2d 307, 314 (1961)).

Even assuming full integration, however, a finding that the FOT Agreement is fully integrated does not answer whether Tomahawk properly may compel Wolff to arbitrate this dispute. The parties to the FOT Agreement are Formtec and Spherical. Wolff is *not* a party to the FOT Agreement. Thus, the Court next considers whether the arbitration clause in the FOT Agreement, even assuming that it is a fully integrated final agreement between Formtec and Spherical, can bind Wolff, a nonsignatory to that agreement.

### 3.   Binding a Nonsignatory to the Arbitration Clause

"[B]ecause arbitration agreements are contracts, a 'party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." *A.D. v. Credit One Bank, N.A.*, 885 F.3d 1054, 1060 (7th Cir. 2018) (quoting *Scheurer v. Fromm Family Foods LLC*, 863 F.3d 748, 751 (7th Cir. 2017)). An arbitration agreement may be enforced against a nonsignatory if the party seeking to compel arbitration can show that an exception to this general rule applies. *Id.* "Traditional principles of state law allow a contract to be enforced by or against nonparties to the contract through assumption, piercing the corporate veil, alter ego, incorporation by reference, third-party beneficiary theories, waiver and estoppel." *Arthur Andersen LLP v. Carlisle*, 556 U.S. 624, 631 (2009). Wisconsin courts have recognized that contractual obligations extend to nonsignatories under a variety of common law principles. *See, e.g.*, *Winnebago Homes, Inc. v. Sheldon*, 29 Wis. 2d 692, 699 (1966) (recognizing the third-party

beneficiary theory); *Dunn v. Pertzsch Constr. Co.*, 38 Wis. 2d 433, 436 (1968) (recognizing

estoppel). "Wisconsin courts have had little opportunity, however, to apply contract and agency

principles to the enforcement of arbitration agreements by or against nonsignatories." *Mayer v.

Soik*, 2021 WL 3073073, at *6 (Wis. Ct. App. July 21, 2021). As noted, though, Wisconsin

courts look to federal cases as persuasive authority in the resolution of a motion to compel

arbitration. *Riley*, 345 Wis. 2d at 816, n.4.

Even if, as Tomahawk argues, the FOT Agreement is fully integrated and incorporates all

Signed NDAs, Tomahawk must still put forth a theory for holding Wolff, a nonsignatory in his

personal capacity, to the arbitration clause contained in the FOT Agreement. Relatedly, because

the FOT Agreement is signed by Robert Tournour as President of Formtec, Tomahawk must also

justify the Court compelling enforcement *by* a nonsignatory to the arbitration clause. Tomahawk

asserts only one argument in its briefing—incorporation by reference.

A contract need not contain an explicit arbitration clause if it validly incorporates by

reference an arbitration clause in another document. *R.J. O'Brien & Assocs., Inc. v. Pipkin*, 64

F.3d 257, 260 (7th Cir. 1995). "A nonsignatory may compel arbitration against a party to an

arbitration agreement when that party has entered into a separate contractual relationship with

the nonsignatory which incorporates the existing arbitration clause." *Thomson-CSF, S.A. v.

American Arbitration Ass'n*, 64 F.3d 773, 777 (2d Cir. 1995).

None of these elements apply in this case. Tomahawk does not assert that the arbitration

clause of the FOT Agreement has been incorporated by reference into any agreement, let alone

one between Tomahawk and Wolff. Nor does Tomahawk assert *any* agreement between it and

Wolff that Tomahawk is attempting to enforce. Instead, Tomahawk is attempting to enforce an

agreement between two other parties, Formtec and Spherical. Thus, incorporation by reference of

PAGE 21 – OPINION AND ORDER

the FOT Agreement's arbitration clause does not provide a basis on which *Tomahawk* can enforce the arbitration clause against *Wolff*.

Tomahawk does not argue theories of agency, alter ego, or piercing the corporate veil. Instead, Tomahawk simply says in describing the factual background that, on information and belief, Wolff is the sole member of Spherical. Such an "'ownership theory' [does] not itself confer a right upon [Tomahawk] to enforce the agreement's arbitration provision" against Wolff. *See Dr. Robert L. Meinders, D.C., Ltd. v. UnitedHealthcare, Inc.*, 800 F.3d 853, 857 (7th Cir. 2015); *Zurich Am. Ins. Co. v. Watts Indus.*, 417 F.3d 682, 687-88 (7th Cir. 2005) ("Rather than explicitly arguing that principles of agency or veil piercing are applicable, Zurich alludes vaguely to the fact that Jones was a wholly owned subsidiary of Watts, and thus should not be permitted to avoid arbitration. . . . A corporate relationship is generally not enough to bind a nonsignatory to an arbitration agreement." (footnote and citation omitted)).

## CONCLUSION

The Court DENIES Tomahawk's Motion to Dismiss Count I of the Amended Complaint for Lack of Subject Matter Jurisdiction or, in the Alternative, Motion to Compel Arbitration, ECF 25.

**IT IS SO ORDERED**.

DATED this 8th day of February, 2022.

/s/ *Michael H. Simon*
Michael H. Simon
United States District Judge