# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF OREGON

| | |
|---|---|
| **JAMES B. WOLFF**, | Case No. 3:21-cv-880-SI |
| Plaintiff, | **OPINION AND ORDER** |
| v. | |
| **TOMAHAWK MANUFACTURING**, | |
| Defendant. | |

Michael J. Morris and Richard B. Myers, BENNETT HARTMAN LLP, 210 SW Morrison St., Suite 500, Portland, OR 97204. Of Attorneys for Plaintiff James B. Wolff.

David W. Silke and Robert Lowery Gillette, II, GORDON REES SCULLY MANSUKHANI LLP, 701 Fifth Avenue, Suite 2100, Seattle, WA 98104; Ashleigh A. Stochel, KILPATRICK TOWNSEND & STOCKTON LLP, 175 W. Jackson Blvd., Suite 950, Chicago, IL 60604; Aaron T. Olejniczak, ANDRUS INTELLECTUAL PROPERTY LAW, LLP, 790 N Water Street, Suite 2200, Milwaukee, WI 53202; Steven L. Levitt and Trevor M. Gomberg, LEVITT LLP, 129 Front Street, Mineola, New York 11501. Of Attorneys for Defendant Tomahawk Manufacturing.

**Michael H. Simon, District Judge.**

Plaintiff James B. Wolff (Wolff) sues his former employer, Defendant Tomahawk Manufacturing (Tomahawk). Wolff asserts a breach of contract claim against Tomahawk, alleging that Tomahawk breached a non-disclosure agreement (NDA) between the parties by disclosing Wolff's confidential information. Wolff also brings three whistleblower retaliation claims under Oregon Revised Statutes (ORS) §§ 654.062, 659A.199, and 659.030A(1)(f).

PAGE 1 – OPINION AND ORDER

Additionally, Wolff alleges disability discrimination in violation of ORS § 659A.112. Finally, Wolff brings an Oregon common-law claim for wrongful discharge. Tomahawk asserts counterclaims against Wolff, alleging breach of the implied contractual duty of good faith and fair dealing and breach of an employee's duty of loyalty. Tomahawk contends that Wolff disclosed to third parties valuable and confidential information owned by Tomahawk or Tomahawk's affiliated company Formtec, LLC (Formtec).

Pending before the Court are cross-motions for summary judgment on Plaintiff's breach of contract claim and Tomahawk's counterclaims. For the reasons discussed below, the Court grants in part Wolff's motion against Tomahawk's counterclaims, denies Wolff's motion on his contract claim, grants in part Tomahawk's motion against Wolff's contract claim, and denies Tomahawk's motion on its counterclaims.[1]

## STANDARDS

A party is entitled to summary judgment if the "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party has the burden of establishing the absence of a genuine dispute of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The court must view the evidence in the light most favorable to the non-movant and draw all reasonable inferences in the non-movant's favor. *Clicks Billiards, Inc. v. Sixshooters, Inc.*, 251 F.3d 1252, 1257 (9th Cir. 2001). Although "[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge . . . ruling on a motion for summary judgment," the "mere existence of a scintilla of evidence in support of the plaintiff's position [is] insufficient . . . ." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252,

---

[1] Notwithstanding Tomahawk's request for oral argument, the Court does not believe that oral argument would help resolve the pending motion. *See* LR 7-1(d)(1).

255 (1986). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (citation and quotation marks omitted).

"When cross-motions for summary judgment are at issue, [courts] evaluate 'each motion separately, giving the nonmoving party in each instance the benefit of all reasonable inferences.'" *Zabriskie v. Fed. Nat'l Mortg. Ass'n*, 940 F.3d 1022, 1026 (9th Cir. 2019) (quoting *ACLU of Nev. v. City of Las Vegas*, 466 F.3d 784, 790-91 (9th Cir. 2006)); *see also Pintos v. Pac. Creditors Ass'n*, 605 F.3d 665, 674 (9th Cir. 2010) ("Cross-motions for summary judgment are evaluated separately under [the] same standard."). In evaluating the motions, "the court must consider each party's evidence, regardless under which motion the evidence is offered." *Las Vegas Sands, LLC v. Nehme*, 632 F.3d 526, 532 (9th Cir. 2011). "Where the non-moving party bears the burden of proof at trial, the moving party need only prove that there is an absence of evidence to support the non-moving party's case." *In re Oracle Corp. Sec. Litig.*, 627 F.3d 376, 387 (9th Cir. 2010). Thereafter, the non-moving party bears the burden of designating "specific facts demonstrating the existence of genuine issues for trial." *Id.* "This burden is not a light one." *Id.* The Supreme Court has directed that in such a situation, the non-moving party must do more than raise a "metaphysical doubt" as to the material facts at issue. *Matsushita*, 475 U.S. at 586.

## DISCUSSION

### A. Issue Preclusion

Several of Tomahawk's arguments in the pending motions relate to Tomahawk's assertion that issue preclusion (formerly known as "collateral estoppel") should apply to some determinations from the arbitration that previously occurred between Formtec and Wolff's affiliated entity, Spherical IP, LLC (Spherical). On August 29, 2023, the Court denied Tomahawk's motion for summary judgment against Wolff's breach of contract claim based on

*claim preclusion* (formerly known as "res judicata"), finding that the arbitrators did not have jurisdiction over Wolff's contract claim. *See Wolff v. Tomahawk Mfg.*, 689 F. Supp. 3d 923, 941-42 (D. Or. 2023). That decision, however, did not directly address *issue preclusion*.

Now, Tomahawk first argues that Wolff stipulated in the pending case that the arbitration award is final and binding *on Wolff* and thus he cannot now dispute the arbitrators' conclusions. The Court rejects Tomahawk's argument. On May 19, 2023, Wolff's counsel simply stipulated that the interim award by the arbitrators filed with the Court on September 16, 2022, "is now final and binding." ECF 134. Wolff did not stipulate that the award is final and binding *against him personally*.

Next, Tomahawk argues that issue preclusion applies under Wisconsin law. Generally, Wisconsin law applies the principles of issue and claim preclusion to arbitration awards. *See Manu-Tronics, Inc. v. Effective Mgmt. Sys., Inc.*, 163 Wis. 2d 304, 311 (Wis. Ct. App. 1991) ("Essential to arbitration remaining useful is the elementary principle that the doctrines of res judicata and collateral estoppel are applicable to arbitration awards."). The reason for applying these doctrines to arbitration awards, however, is because "'[p]arties who contract for arbitration are entitled to an arbitration award without the added expense of having to relitigate the issue in court." *Franke v. Franke*, 268 Wis. 2d 360, 413-14 (Wis. 2004) (Prosser, J., dissenting) (quoting *Lukowski v. Dankert*, 178 Wis. 2d 110, 113 (Wis. Ct. App. 1993)). That consideration does not apply here because Wolff did not contract for arbitration.

Tomahawk cites two Wisconsin cases to support the application of issue preclusion: *Paige K.B. ex rel. Peterson v. Steven G.B.*, 226 Wis. 2d 210 (Wis. 1999), and *Jensen v. Milwaukee Mutual Insurance Co.*, 204 Wis. 2d 231 (Wis. Ct. App. 1996). Both cases predate the U.S. Supreme Court's decision in *Taylor v. Sturgell*, 553 U.S. 880 (2008). In *Taylor*, the U.S.

Supreme Court emphasized that applying "issue preclusion to nonparties" raises due process issues and "runs up against the 'deep-rooted historic tradition that everyone should have his [or her] own day in court.'" *Id.* at 892-93 (quoting *Richards v. Jefferson County*, 517 U.S. 793, 798 (1996)). The U.S. Supreme Court described six possible exceptions. *See id.* at 893-906. None of them included applying estoppel to the principal of a closely held corporate entity or based on other corporate structures, as the Wisconsin Court of Appeals had previously found might support applying preclusion principles for claim preclusion. *See, e.g.*, *Manu-Tronics*, 163 Wis. 2d at 315 ("The identity of parties requirement of *res judicata* is met where the two actions involve a closely held corporation in one case . . . and its principal shareholder in the other, and the principal shareholder actively participated in the first case." (cleaned up)). After *Taylor*, however, the Wisconsin Court of Appeals distinguished between the capacity in which a person appears in successive actions in considering issue preclusion. *See Est. of Read ex rel. Read v. Kronberg*, 2015 WI App 28, ¶ 27, 361 Wis. 2d 284 (Wis. Ct. App., Feb 19, 2015) ("Furthermore, 'with respect to issue preclusion, a party appearing in successive actions in the same capacity is subject to issue preclusion but is not precluded where the capacities in which he participated are different.'" (cleaned up) (quoting *Restatement (Second) of Judgments* § 36 cmt. a)).

Although the U.S. Supreme Court in *Taylor* was applying federal common law, its discussion stemmed from due process concerns. Further, in *Paige K.B.*, the Wisconsin Supreme Court cited an older U.S. Supreme Court case, *Montana v. United States*, 440 U.S. 147 (1979), which applied federal law. The Wisconsin Supreme Court in *Paige K.B.* emphasized that its holding relied on and was consistent with the *Montana* court's guidance on issue preclusion. *Paige K.B.*, 226 Wis. 2d at 223-24. *Montana* applied one of the exceptions later discussed in *Taylor*, when a nonparty "exercised control" over the first litigation and thus "plainly had a

sufficient 'laboring oar' in the conduct of the [first] litigation to actuate principles of estoppel."
*Montana*, 440 U.S. at 155 (quoting *Drummond v. United States*, 324 U.S. 316, 318 (1945)). But
in discussing the six exceptions allowing preclusion to apply to a nonparty, the U.S. Supreme
Court in *Taylor* did not include principals of closely held corporate entities in that (or any other)
context—even though such principals necessarily will "exercise control" of litigation involving
the corporate entities. Automatically applying preclusion doctrines in such situations obviates the
corporate structure without any assertion of piercing the corporate veil or alter ego.[2] The Court
declines to do so here.

Additionally, Wisconsin courts consider issue preclusion to be "a flexible doctrine that is
bottomed in concerns of fundamental fairness and requires that one must have had a fair
opportunity procedurally, substantively and evidentially to litigate the issue before a second
litigation will be precluded." *Dane County v. Dane Cnty. Union Loc. 65*, 210 Wis. 2d 267, 278
(Wis. Ct. App. 1997). The Wisconsin courts have identified five factors to consider in evaluating
"fundamental fairness":

> (1) could the party against whom preclusion is sought, as a matter
> of law, have obtained judicial review of the judgment; (2) is the
> question one of law that involves two distinct claims or intervening
> contextual shifts in the law; (3) do significant differences in the
> quality or extensiveness of proceedings between the two courts
> warrant relitigation of the issue; (4) have the burdens of persuasion
> shifted such that the party seeking preclusion had a lower burden

---

[2] This conclusion does not foreclose applying preclusion principles to circumstances
where a plaintiff sues a corporate defendant, loses, and then files suit against a corporate owner
or officer. In such circumstances, the corporate owner or officer can be found in privity with the
corporate entity and defensive issue preclusion or claim preclusion can apply to foreclose the
plaintiff's suit. This is different from attempting to apply issue preclusion to prevent an
individual defendant from defending himself or herself to avoid personal liability based on a
previous litigation involving a corporate entity, because the point of a corporate structure is to
protect individuals from personal liability. Applying offensive collateral estoppel in such
circumstances without demonstrating a basis to pierce the corporate veil invalidates the corporate
structure and likely implicates due process concerns.

> of persuasion in the first trial than in the second; or (5) are matters
> of public policy and individual circumstances involved that would
> render the application of collateral estoppel to be fundamentally
> unfair, including inadequate opportunity or incentive to obtain a
> full and fair adjudication in the initial action.

*Lindas v. Cady*, 183 Wis. 2d 547, 560-61 (Wis. 1994) (citing in a footnote *Restatement (Second) of Judgments* § 28 (1982)).

Considering these factors, Wolff could not as a matter of law have obtained judicial review of the arbitration award. Wolff was not a party to the arbitration. Even considering him a privy of Spherical, arbitration awards are not "reviewed" by courts—they are confirmed or vacated. And they can be vacated only under narrow and extraordinary circumstances. There are other considerations that counsel against application of issue preclusion in the circumstances of this case. The arbitrators' authority stems from the parties' contractual agreement. Wolff did not agree to the authority of the arbitrators. Further, the Court held *before* the arbitration that the arbitrators did not have jurisdiction over Wolff's claim. Thus, precluding Wolff from litigating his claim in court, where he originally brought his claim, after this Court expressly held that the arbitrators did not have jurisdiction over the claim, would be fundamentally unfair. Wolff was on specific notice by this Court that the arbitrators did not have jurisdiction over Wolff's contract claim and would not be hearing Wolff's contract claim. Thus, Wolff did not have the same incentive to litigate issues on behalf of Spherical that might collaterally affect Wolff's contract claim, because he was assured that he would have his day in court. To now hold that he is precluded from his day in court because of an arbitration that had no jurisdiction over his claim would be unfair. The Court rejects Tomahawk's argument that issue preclusion applies under these circumstances.

### B. Contract Claim

#### 1. Wolff's motion

Wolff moves for partial summary judgment, requesting that the Court: (1) declare that Wolff is the "owner" of particular technology; (2) enjoin Tomahawk from designing, manufacturing, or selling items incorporating that technology; (2) enjoin Tomahawk's personnel, including its President, Robert Tournour, from assisting Formtec in disclosing that technology or manufacturing items that incorporate that technology; (4) declare that Wolff is entitled to compensation for any previous sales of machines, tooling, or equipment that incorporated that technology; (5) order Tomahawk to account for all sales of machines, tooling, or equipment that incorporated that technology; and (6) order Tomahawk to account for the license or transfer or that technology in any form. Wolff argues that there is no genuine dispute that the 2010 NDA between the parties governs the technology at issue and requires the relief requested.

Wolff is a "master machinist" and inventor. ECF 294 ¶ 2.[3] Wolff was working on an invention to reduce pressure in food-forming machines and increase the quality of the meat product. *Id.* ¶ 4. One aspect of Wolff's invention was using a particular orifice shape to create a principle known in physics as the "Venturi effect," which allows greater velocity with less pressure. *Id.* ¶¶ 4-5. It also re-aligned the meat fibers, creating a "superior" meat patty. *Id.* ¶ 6. Wolff coined his invention "Fiber Orienting Technology" (FOT). *Id.*

Tournour was interested in Wolff's invention, and the two met in Portland, Oregon on November 16-18, 2010. ECF 226 ¶ 2, 294 ¶ 4. Wolff demanded that the parties sign an NDA to protect Wolff's confidential information. ECF 226 ¶ 3, 294 ¶ 7. Although Wolff sent a draft 10 days before the meeting, Tournour had his attorney revise the agreement, and the parties did not

---

[3] Because there are multiple declarations in the record by the same declarant, the Court references declarations by ECF number.

sign the NDA until November 18, 2010, with an effective date of November 2, 2010. ECF 226

¶¶ 3-4. The NDA defined "Confidential Information" as:

> all information provided by [Wolff] to [Tomahawk] related to
> business programs, products, applications, systems, components,
> technologies and business topics, including but not limited to
> written, oral, audio tapes, video tapes, computer discs, machines,
> protypes, designs, specifications, articles of manufacture,
> drawings, human or machine readable documents. Confidential
> Information shall also include all information provided by [Wolff]
> to [Tomahawk] prior to the signing of this Agreement. If
> Confidential Information is transmitted orally, [Wolff] shall
> promptly provide a written warning (within 25 business days)
> indicating that such oral communication constituted Confidential
> Information.

ECF 294-1 at 1.

The parties dispute the meaning of the phrase "prior to the signing of this Agreement" in

defining confidential information. Wolff contends that it means any information that otherwise

meets the definition that he imparted to Tournour before signing the agreement. Tomahawk

contends that it means information that otherwise meets the definition that was imparted no more

than 25 business days before the signing of the agreement such that the condition precedent of

the 25-day notice clause could be applied. Tomahawk argues that older information cannot be

"confidential information" because no written notice under the 2010 NDA could have been

provided.

The clause defining that confidential information includes information provided before

the signing of the 2010 NDA is broad ("all information") and contains no temporal limitation.

The clause establishing the condition of prompt written notice states only that it be "within 25

business days." For confidential information transmitted orally "prior to the signing of this

Agreement [the 2010 NDA]," this clause easily can be interpreted to mean within 25 business

days of the signing of the agreement. For confidential information transmitted orally after the

signing of the 2010 NDA, it means 25 business days from the oral transmission. The interpretation that Wolff had to provide 25 business days' written notice of confidential information disclosed orally further back in time from the oral transmission itself is an impossible condition precedent, and such impossible contract terms are unenforceable under Wisconsin law. *See In re Est. of Sheppard*, 328 Wis. 2d 533, 542 (Wis. Ct. App. 2010) (explaining that a contractual obligation "is nevertheless discharged because its condition precedent . . . has become impossible" (quoting 14 *Corbin on Contracts* § 75.2 (2010)).

Tomahawk's interpretation would render the sentence defining confidential information as including "all information" provided before the signing of the agreement meaningless. The Court construes the 2010 NDA in a manner that gives meaning to all the clause's terms. *See Ash Park, LLC v. Alexander & Bishop, Ltd.*, 363 Wis. 2d 699, 713 (Wis. 2015) ("Interpretations that give reasonable meaning to each provision in the contract are preferred over interpretations that render a portion of the contract superfluous.").

Wolff also argues that providing written notice for orally conveyed confidential information is a "covenant" not a "condition" and interpreting it as a condition precedent for coverage under the 2010 NDA would result in "the harsh effect of forfeiture" that generally is disfavored because it results in a "minor failure . . . wholly destroying all rights under the contract." *Sleash, LLC v. One Pet Planet, LLC*, 2014 WL 3859975, at *16 (D. Or. 2014) (quoting 13 *Williston on Contracts* § 38:13). Wolff, however, cites cases within the Ninth Circuit, not Wisconsin law.

Wisconsin courts generally enforce conditions precedents if their compliance can be objectively assessed. *See Kocinski v. Home Ins.,* 147 Wis. 2d 728, 738-40 (Wis. Ct. App. 1988), *aff'd as modified on other grounds and remanded*, 154 Wis. 2d 56 (Wis. 1990). Under

Wisconsin law, courts are to avoid construing ambiguous contracts or contracts subject to more than one reasonable interpretation to include forfeiture of rights, if "no injustice would be done to the other party" with such an interpretation of the contract. *See Zuelke v. Gergo*, 258 Wis. 267, 273 (Wis. 1951); *see also Maxey v. Redevelopment Auth. of Racine*, 94 Wis. 2d 375, 403 (Wis. 1980) (explaining Wisconsin law "abhors a forfeiture unless stated in most explicit terms").

The 2010 NDA is unambiguous and explicitly requires written notice only for oral transmissions of confidential information. Additionally, failure to provide this notice for oral communications of purported confidential information is not a "minor failure." It is essential to the agreement, as shown by the difference in treatment by the agreement between oral disclosure and all other types of disclosure listed in the agreement. Construing the clause otherwise would do an "injustice" to Tomahawk. Oral disclosure is too vague to put Tomahawk on notice as to whether something is considered confidential information by Wolff, and thus the written notice requirement. Additionally, if the 2010 NDA is construed as covering information orally provided by Wolff without any written notice, that express term would be rendered superfluous and the Court would be treating oral communications no differently than all other methods of transmitting confidential information. The Court rejects Wolff's interpretation and construes the plain text of the 2010 NDA as including the written notice requirement as a condition precedent for coverage of oral transmission of confidential information.[4]

_____

[4] The Court also rejects Wolff's interpretation that the 2010 NDA does not require written notice for oral disclosures of confidential information made in the presence of other Tomahawk witnesses. The 2010 NDA does not provide that exception. The Court agrees with Wolff, however, that the 2010 NDA does not require written notice for confidential information provided in writing or through video tape, audio tape, computer disc, machines, prototypes, designs, specifications, drawings, articles of manufacture, or other documents. The Court finds the 2010 NDA unambiguous on this point. Wolff, however, does not indicate that he provided

On December 12, 2010, explicitly pursuant to the NDA's requirements, Wolff notified
Tournour by email of certain proprietary innovations that Wolff believed were covered by
the 2010 NDA. ECF 294-2. As relevant to the pending motion, Wolff identified the following as
protected under the 2010 NDA:

> FOT, Fiber Orienting Technology. The concept's core principle is
> a hole which changes size from a larger to smaller diameter with
> vertical or concave sides having a sharp edge . . . , resulting in an
> acceleration of the product with a drop in pressure (meat in this
> case) causing the product to be stretched[,] aligning the fibers of
> the product. The principle has design similarities to a venturi. It
> can be referred to as a choke plate, nozzle, venturi, orifice, or a
> restriction to flow which results in product acceleration with a
> corresponding pressure drop through the orifice.

*Id.* at 1. For purposes of this motion, Wolff claims that the technology described in this
December 2010 email is the "Wolff Technology," which Wolff argues he owns. Wolff requests
injunctive relief, however, relating only to his claimed technology of orifices in geometric shapes
creating a venturi effect increasing acceleration with decreased pressure in water applications
and vacuum bars (Disputed Technology).

In November 2012, Wolff, through Spherical, entered into an agreement with Formtec,
assigning controlling interest in FOT to Formtec (FOT Agreement). In its preamble, the FOT
Agreement states that Spherical had "developed a fiber orientation technology and a venturi
effect technology (hereinafter referred to as 'the Technology')" and had "agreed to assign any
and all of its rights, titles, and interests, in, percentages defined below, in and to the Technology
to FORMTEC." ECF 305-1 at 1. In the "Definitions" section of the FOT Agreement, it defines
"Technology" as "any inventions relating to any use of a venturi effect using spherical geometry,
and any fiber orientation." *Id.* Tomahawk argues that the FOT Agreement is broad and covers all

---

confidential information for the technology asserted in his motion for summary judgment in that
manner.

types of products using a venturi effect using spherical geometry. Thus, Tomahawk argues that Wolff no longer can claim rights to any of this technology.

Wolff contends that the FOT Agreement covers only inventions that relate to the meat forming industry, because by its own terms, "fiber orienting technology" must have fibers to orient and thus must be related to meat. Wolff also relies on the clause "and any fiber orientation" in the definition of "Technology" in the FOT Agreement, arguing that the contract is unambiguous that this is a necessary condition for coverage by the FOT Agreement. Wolff thus concludes that applications of his concept of a venturi effect using spherical geometry to water products or vacuum bars (the Disputed Technology), which do not orient fibers, are not part of FOT and not within the FOT Agreement.

Tomahawk continues to assert that the Disputed Technology falls under FOT and Wolff is prohibited from claiming any rights arising out of FOT or any product relating to FOT under the FOT Agreement. Tomahawk argues that these issues were conclusively decided in the arbitration between Formtec and Spherical relating to the FOT Agreement. The arbitrators concluded that Formtec has the exclusive rights to the technology governed by the FOT Agreement. The arbitrators added that the parties in the arbitration did not dispute that water nozzles were technology governed by the FOT Agreement and thus were under the exclusive control of Formtec. Tomahawk contends that issue preclusion prevents Wolff from arguing that the Disputed Technology is not covered under the FOT Agreement. The Court has rejected Tomahawk's argument that the arbitration decision supports issue preclusion against Wolff personally.

The conclusion that the arbitration decision does not bind Wolff personally, however, does not answer the question of whether Wolff is entitled to summary judgment. To prevail at

summary judgment, Wolff must show he is entitled to judgment as a matter of law, or that viewing the facts *in the light most favorable to Tomahawk*, there is no genuine disputed issue of fact that Wolff is entitled to prevail.

Wolff asserts that his claimed technology, particularly the Disputed Technology, is not covered by the FOT Agreement because it is unrelated to meat products, and thus is not fiber orienting and so it remains his technology. But Tomahawk then responds that if the technology claimed by Wolff is not FOT, Wolff never provided the required written notice to Tomahawk that the information given to Tomahawk was "confidential information" under the 2010 NDA. Tomahawk argues that the December 2010 email sent by Wolff only disclosed FOT as protected confidential information. Tomahawk contends that Wolff can have it one of two ways—either Wolff's claimed technology in his motion falls under FOT and he gave the necessary notice in December 2010 to protect it but it falls within the FOT Agreement, or it does not fall under FOT and then he never gave any written notice as required by the 2010 NDA and the technology is not protected under that document. Either way, Tomahawk argues, Wolff cannot obtain summary judgment in his favor.

Tomahawk also quotes Wolff's deposition testimony from the arbitration, where he admits that he sold his "entire portfolio," which included "[a]pplications of sphere-into-cylinder technology outside of protein forming" and "all types of different applications," including "power washer spray nozzles," "showerheads," and "fuel system applications." ECF 318 at 20-21 (citing ECF 321 at 11, 26, 32). Tomahawk argues this shows that Wolff knew that FOT included more than meat products and that Wolff has "reformulated" his claim as this litigation progressed.

Wolff's responds both that he worked with Formtec and Tomahawk to develop spray nozzles using a venturi but they did not finalize the technology to the point of negotiating a new license agreement, and that he never needed to give any written notice under the 2010 NDA regarding non-meat applications of his technology because he never discussed non-meat applications with Tomahawk. The Court does not find the latter argument persuasive. First, Wolff states that he discussed non-meat applications with Tomahawk—he describes that the parties worked together on a water spray nozzle. Second, it is not the *application* but the *technology* that is the protected information.

If Wolff believed that orifices with a geometric shape that cause acceleration with a drop in pressure of the product, without any alignment of fibers, was confidential information, and he orally disclosed this technology to Tomahawk, then Wolff would have needed to provide notice to Tomahawk that he believed this was confidential information protected by the NDA. Wolff's 2010 email notice states that it covers orifices with a geometric shape that causes acceleration of the product with a drop in pressure *that align fibers* and identifies the product as "meat in this case." A reasonable jury could find that non-meat related technology, particularly the Disputed Technology, falls outside this notice because it does not have fibers (which Wolff himself argues in contending that the Disputed Technology falls outside the FOT Agreement).[5]

---

[5] Wolff's argument is somewhat inconsistent. In his opening brief he argues that he is claiming technology only covered by the 2010 email notice, which both identifies meat as the product and limits the technology to products that are stretched to align fibers. But then Wolff argues that his technology does not fall within the FOT Agreement because it does not involve fibers. In his reply, Wolff argues that he did not need to give notice because he did not discuss applications involving non-meat usage. Regardless of whether he needed to give notice, however, he has defined his "Wolff Technology" as the technology *covered by his 2010 email*, which a reasonable jury could find only includes meat products or products involving fibers, which Wolff concedes are covered by the FOT Agreement.

The Court agrees with Tomahawk that, viewing the facts in the light most favorable to it, there is a genuine dispute about whether Wolff's claimed technology in this motion is covered by the 2010 NDA. A reasonable jury could conclude that the technology is covered by the 2012 FOT Agreement or that Wolff was required, and failed, to give written notice when he imparted the confidential information to Tomahawk. Thus, the Court denies Wolff's motion for partial summary judgment.

### 2. Tomahawk's Motion

Tomahawk argues that Wolff's contract claim fails because Wolff failed to provide the required written notice for confidential information orally provided to Tomahawk.[6] Thus, argues Tomahawk, none of the purported confidential information alleged in the Third Amended Complaint is protected under the 2010 NDA. Tomahawk also asserts arguments as to why certain alleged confidential information does not qualify as confidential information proprietary to Wolff. In response, Wolff argues why each piece of allegedly confidential information is protected under the 2010 NDA.[7]

---

[6] Tomahawk originally also argued that Wolff's contract claim was barred by the statute of limitations but conceded that argument in its reply. Instead, Tomahawk raises in its reply a new argument, that Wolff fails to state a claim for breach of contract. The Court disregards new arguments raised in a reply brief. *See Zamani v. Carnes*, 491 F.3d 990, 997 (9th Cir. 2007) ("The district court need not consider arguments raised for the first time in a reply brief."); *Mitchell v. United States*, 971 F.3d 1081, 1084 n.4 (9th Cir. 2020) (affirming the district court's conclusion that an argument raised for the first time in a reply is waived).

[7] Wolff's separate motion for partial summary judgment focuses on water nozzles and raises new arguments relating vacuum bars, claimed technology not alleged in the Third Amended Complaint and not raised in the briefing on Tomahawk's motion for summary judgment. Tomahawk argues in its response to Wolff's motion that Wolff should not be permitted to assert those additional arguments and related evidence as a belated response to Tomahawk's motion for summary judgment. Wolff, however, did not request that the briefing on his motion for partial summary judgment, which was filed two months after Tomahawk's motion was fully briefed, be considered as a supplement to the briefing on Tomahawk's motion. The Court considers each motion separately. *See Zabriskie*, 940 F.3d at 1026.

### a. Gradient Breather Plates

The first alleged piece of confidential information is gradient breather plates. Wolff states that breather plates can have both FOT and non-FOT configurations, depending on the type of holes used. ECF 206 ¶ 8. Tomahawk argues that Wolff failed to provide written notice about this purported confidential information. Wolff, however, states that he provided *drawings* relating to breather plates. *Id.* The 2010 NDA only requires separate written notice if Wolff provided confidential information *orally*.

Tomahawk also argues that Wolff began working on breather plates when he was an employee at Fulton Provisions Co. (Fulton), and thus he cannot claim the invention for himself.[8] Wolff worked at Fulton for 18 years and left in 2008. Wolff states that although he began working on several inventions to reduce pressure in meat-forming while at Fulton, Fulton abandoned the project so Wolff continued working for years on the inventions in his own machine shop. ECF 206 ¶ 2. Viewing these facts in the light most favorable to Wolff, the Court denies Tomahawk's motion with respect to this technology.[9]

### b. Bosch Valves

Tomahawk makes the same argument about Bosch valves as gradient breather plates— that Wolff was an employee of Fulton. For this product, however, Wolff admits that he completed the entire project while an employee at Fulton. He states that he "concluded that employing Bosch valves would solve many problems faced with the Tomahawk paper insertion

---

[8] Tomahawk raises additional arguments in its reply. As noted, the Court disregards arguments raised for the first time in reply.

[9] As a separate and independent reason, the Court also denies Tomahawk's motion because even if Wolff completed this at Fulton, Tomahawk fails to rebut the presumption that the invention remained Wolff's. The Court's reasoning is discussed more below in evaluating Bosch valves.

system." ECF 206 ¶ 9. Wolff then "explained" the Bosch valve solution to Tomahawk and "showed" Tomahawk how to use the Bosch valves. *Id.*

Generally, "[o]wnership springs from invention. . . . [A]n invention presumptively belongs to its creator." *Teets v. Chromalloy Gas Turbine Corp.*, 83 F.3d 403, 407 (Fed. Cir. 1996). This is true even if the employee "conceived it or reduced it to practice in the course of his employment." *REXA, Inc. v. Chester*, 42 F.4th 652, 668 (7th Cir. 2022). "However, there are two exceptions that might assign ownership to the employer instead." *Farmers Edge Inc. v. Farmobile, LLC*, 970 F.3d 1027, 1031 (8th Cir. 2020). The first is through an express contract assigning rights to the employer. *Id.* The second is if the employee was hired to invent the products they worked on, which creates and implied-in-fact contract assigning the rights to the invention to the employer. *Id.* at 1031-32. For the latter, "[t]he pertinent question is whether the employer specifically directed the employee to create the invention at issue." *REXA, Inc.*, 42 F.4th at 669 (quotation marks omitted). Courts look to the "specificity of the task assigned to the employee." *Id.* (quoting *Farmers Edge*, 970 F.3d at 1032). Wisconsin applies this same law. *See Dickman v. Vollmer*, 303 Wis. 2d 241, 252-53 (Wis. Ct. App. 2007).

The Court rejects Tomahawk's argument that it is entitled to summary judgment because Wolff was employed by Fulton when he invented the Bosch valve solution. Tomahawk provides no evidence to rebut the presumption that Wolff's inventions belonged to him. Tomahawk provides evidence that Wolff was employed at Fulton and that it was Wolff's responsibility to keep the machines running. This falls short of showing that Wolff specifically was tasked with solving the particular problem with Tomahawk's paper insertion system for which he invented the Bosch valve solution. Nor has Tomahawk provided any evidence that Wolff had a contract

with Fulton assigning it rights to Wolff's inventions or that Wolff was hired or assigned to invent the Bosch valve solution. Therefore, this argument by Tomahawk fails.

Tomahawk also argues, however, that Wolff failed to provide the requisite written notice to Tomahawk that Wolff considered the Bosch valves confidential information under the 2010 NDA. At the time Wolff "explained" this technology and "showed" Tomahawk Wolff's invention, which is oral transmission of purported confidential information, there was no 2010 NDA and Wolff was an employee of Fulton. Years later, Wolff and Tomahawk entered into the 2010 NDA, which requires written notice for orally transmitted confidential information. As the Court has explained, for older information transmitted to Tomahawk, Wolff was required to provide written notice within 25 business days of signing the 2010 NDA. Wolff did not. Wolff cannot now attempt to invoke the protections of the 2010 NDA when he made no effort to comply with its requirements for coverage of oral disclosures. The Court grants Tomahawk's motion on this ground.

### c.  Center Shafts

Tomahawk argues that Wolff fails to raise a genuine issue of material fact that the alleged center shafts are confidential information under the 2010 NDA. Tomahawk explains that this claim involves a request Wolff made in 2002 or 2003, when he was employed at Fulton, that Tomahawk change the metal it used to make center shafts. Tomahawk argues that this does not qualify as confidential information, and that even if it does, Wolff never provided any written notice as required under the 2010 NDA.

Wolff responds only that he discussed with Tournour about manufacturing center shafts with a new material, and Tournour admitted it was a new concept but agreed that Tomahawk could do it. Wolff thus concedes that he conveyed this purported confidential information orally, and he provides no evidence or argument that he provided written notice as required under

the 2010 NDA. Accordingly, the Court grants partial summary judgment on this aspect of Tomahawk's motion.

### d.  CorrosionX

Wolff alleges that he provided a "[s]olution to the chronic problem of corrosion in tooling parts through a method of application of CorrosionX." Third Am. Compl. ¶ 8(h). Tomahawk argues that Wolff concedes this was done while Wolff was an employee of Tomahawk, and that he orally conveyed this information to Tomahawk's head of engineering, without providing the requisite written notice.

As discussed above, the mere fact that Wolff was employed by Tomahawk is not dispositive of whether this was Wolff's confidential information. Wolff, however, does not contend that he conveyed this purported confidential information through any means other than orally, and thus he was required to provide written notice under the 2010 NDA. Wolff provides no evidence of, nor argues that he provided, the necessary written notice. The Court thus grants summary judgment against this purported type of confidential information.

### e.  Interleaver Rollers

Tomahawk challenges Wolff's claimed confidential information of interleaver rollers because Tomahawk paid for the parts, Wolff admits that other Tomahawk employees worked on them, and Wolff failed to provide written notice. Wolff responds simply that he designed important improvements, without asserting that he conveyed any information in a method other than orally. Because Wolff failed to provide written notice under the 2010 NDA, the Court grants summary judgment against this claimed type of confidential information and declines to reach Tomahawk's other arguments.

### f.  Hour Meters

Tomahawk argues that Wolff's contributions to hour meters do not qualify as confidential information under the NDA because his efforts to improve hour meters were part of his duties at Tomahawk and were in done in conjunction with another Tomahawk employee, and because he failed to provide the requisite written notice. Wolff responds that it was his concept to employ hour meters in the machines and he conveyed that concept in the presence of Tomahawk's chief engineer. He thus admits that he conveyed the purported confidential information orally, and he offers no argument or evidence that he provided the required written notice. Accordingly, the Court grants summary judgment on this aspect of Tomahawk's motion and declines to reach Tomahawk's remaining arguments.

### g.  Vacuum Bars

Tomahawk argues that Wolff cannot claim any confidential information in vacuum bars because he admitted to not having put technology in a vacuum bar and, regardless, he never provided any written notice. Wolff responds that the vacuum bars "exactly match" the design described in the December 2010 email, *to wit* "a hole which changes size from a larger to smaller diameter with vertical or concave sides having a sharp edge." Wolff thus contends he provided the required written notice. Wolff, however, ignores the latter part of the description in the 2010 email, which states "resulting in an acceleration of the product with a drop in pressure (meat in this case) causing the product to be stretched, aligning the fibers of the product." Wolff fails to explain how the use of the holes in the vacuum bars caused the product to be stretched and therefore aligned the fibers of the product. Indeed, Wolff contends that there are no fibers involved in the vacuum bars. The Court thus grants Tomahawk's motion in this respect.

### h. Soft Choice/Soft Fill

Tomahawk argues that Wolff's claimed confidential information related to soft choice or soft fill is not covered by the 2010 NDA because Wolff admitted that it was FOT material covered by the arbitration and after the arbitrators rejected this theory Wolff "changed his mind" and believed it was covered by the NDA. The Court disagrees that Wolff made such an admission. The deposition testimony of Wolff quoted by Tomahawk states that "it became part of what I thought was going to be [in] the FOT arbitration, and during arbitration, it would be this last year, October, I became aware that it was not being included as part of the arbitration, so it is covered by my NDA." ECF 170 at 11 n.27. Wolff did not state that the arbitrators rejected anything, he merely stated that he believed the issue would be covered in the arbitration and when it was not, he then understood that the product was covered by the 2010 NDA. Wolff consistently has argued that the 2010 NDA covers non-FOT items and the FOT Agreement (and arbitration) covers FOT items.

Tomahawk also argues that Wolff is using this proceeding to "reargue" positions "rejected" by the arbitrators, but it is unclear what positions Tomahawk contends the arbitrators decided. The only quote Tomahawk offers is Wolff's statement that this item was not a part of the arbitration, which is different from the arbitrators making a substantive determination about soft choice or soft fill. Further, the Court has held that the arbitration decision has no preclusive effect in this pending federal court lawsuit.

As for Tomahawk's overarching argument that Wolff did not provide the requisite written notice for any of the confidential information alleged in the Third Amended Complaint, Tomahawk does not provide any specific argument relating to soft fill/choice on that ground, thereby waiving such argument. *See, e.g.*, *Consumer Fin. Prot. Bureau v. Noh*, 2022 WL 20581960, at *2 (C.D. Cal. Jan 18, 2022) (noting that a court is not "required to address

perfunctory and undeveloped arguments" (quoting *Khademi v. S. Orange Cnty. Cmty. Coll. Dist.*, 194 F. Supp. 2d 1011, 1027 (C.D. Cal. 2002))); *Cf. Ventress v. Japan Airlines*, 747 F.3d 716, 723 n.8 (9th Cir. 2014) (declining to address an "undeveloped argument . . . not supported by citations to the record, argument, or any legal authority"); *Crime Just. & Am., Inc. v. Honea*, 876 F.3d 966, 978 (9th Cir. 2017) ("Issues raised in a brief which are not supported by argument are deemed abandoned." (quoting *Leer v. Murphy*, 844 F.2d 628, 634 (9th Cir. 1988))).

Additionally, relating to written notice, Wolff states that he provided a written manual with specifications and other details on this purported confidential information, which takes it out of confidential information that was orally communicated. Wolff also submits a copy of an email he sent to Tournour on February 19, 2012, identifying Wolff's work on the F26 hydraulic system as protected under the 2010 NDA. Tomahawk attempts to discount this evidence with statements from Tournour, but the Court must view the facts in the light most favorable to Wolff. There are issues of fact precluding summary judgment even if Tomahawk had properly presented the issue of written notice.

### i.  Actual Notice

Wolff argues that Tomahawk had "actual notice" of Wolff's inventions, thereby negating any requirement of written notice in the 2010 NDA. Wolff misses the mark with this argument. The issue is not whether Tomahawk knew about the purported inventions, but whether Tomahawk knew Wolff considered the information underlying these inventions to be "confidential information" under the 2010 NDA. There would be no point in having a written notice requirement in the 2010 NDA if actual knowledge would suffice, because orally conveying to Tomahawk the confidential information would provide it with "actual knowledge" of that confidential information, but the 2010 NDA still required written notice.

The written notice requirement is particularly important for information conveyed years before the 2010 NDA was signed by the parties. That Wolff told Tournour something in 2002 that Tournour had Tomahawk implement for Fulton cannot reasonably be expected to put Tomahawk on notice that Wolff considered that information to be "confidential information" under an agreement signed eight years later. It was incumbent on Wolff to provide written notice to Tomahawk as required under the 2010 NDA to invoke the protections of the 2010 NDA.

### j.  Conclusions Regarding Wolff's Claims

The Court grants Tomahawk's motion in part. The Court grants partial summary judgment against Wolff on his contract claim based on all specifically alleged purported confidential information except gradient breather plates and soft choice/soft fill.

## C.  Counterclaims

### 1.  Breach of Implied Contractual Duty of Good Faith

Tomahawk's first counterclaim asserts that Wolff breached the implied contractual duty of good faith and fair dealing in disclosing confidential information to third parties. In generally alleging the facts supporting its counterclaims, Tomahawk alleges that Spherical, its affiliated company Spherical Innovations, LLC (Spherical Innovations), Formtec, and Tomahawk entered into confidentiality agreements on December 20, 2011. In specifically alleging its first counterclaim, Tomahawk alleges that Wolff "directly or indirectly" entered into agreements with Tomahawk that protect Tomahawk's confidential information. In briefing the motions for summary judgment, Tomahawk also asserts that the FOT Agreement incorporated by reference these confidentiality agreements and the 2010 NDA. Other than the 2010 NDA, however, none of the confidentiality agreements were between *Wolff* and Tomahawk or Formtec. They were between *Spherical* or *Spherical Innovations* and Tomahawk or Formtec. And the 2010 NDA does not protect Tomahawk's rights to its confidential information.

The Court already has explained that a nonsignatory cannot be bound to an agreement, absent claims of agency, alter ego, or piercing the corporate veil, which Tomahawk does not allege, in finding that Wolff was not bound to the FOT Agreement's arbitration clause. *See Wolff v. Tomahawk Mfg.*, 2022 WL 377926, at *10-11 (D. Or. Feb. 8, 2022), *aff'd*, 2022 WL 17749271 (9th Cir. Dec. 19, 2022). Tomahawk points out that the arbitrators concluded that Spherical, through its principal Wolff, breached the FOT Agreement and disclosed confidential information to third parties. The arbitrators enjoined Wolff as Spherical's principal from disclosing such information. Tomahawk argues that this Court is thus required to find that *Wolff, individually*, has violated some contract and must grant Tomahawk's motion for summary judgment on its first counterclaim and deny Wolff's motion for summary judgment. Tomahawk solely relies on its arguments related to issue preclusion, which the Court has rejected. The Court thus denies Tomahawk's motion for summary judgment on its first counterclaim.

Wolff argues that he is entitled to summary judgment against Tomahawk's first counterclaim because he did not sign any of the 2011 confidentiality agreements or the FOT Agreement, and thus he cannot be liable for breaching those contracts.[10] The Court agrees. Tomahawk does not argue or provide any evidence for piercing the corporate veil. Nor does Tomahawk provide any authority for why Wolff, as a nonsignatory, would be held liable for *breach of contract* for a contract for which he is not a signatory, other than Tomahawk's rejected arguments on issue preclusion. *See, e.g.*, *Chudy v. Chudy Grp.*, 2023 WL 4591300, at *5 (E.D. Wis. July 18, 2023) ("It is uncontroversial that non-parties ordinarily cannot be held liable for a

_____

[10] Wolff also argues that Tomahawk cannot prosecute claims for contracts on which Tomahawk was not a signatory, but only Formtec signed. The Court declines to reach this argument, and others raised by Wolff, because the Court grants Wolff's motion based on the fact that Wolff was not a signatory to any of the agreements alleged by Tomahawk that form the basis of its first counterclaim.

breach of contract." (quotation marks omitted)); *Karl v. United States*, 2022 WL 17989633, at *4 (W.D. Wis. Dec. 29, 2022) ("As for the breach of contract claims, 'as a basic principle of contract law, a non-party cannot be held liable for a breach of contract.'" (quoting *Northbound Grp. v. Norvax, Inc.*, 795 F.3d 647, 650 (7th Cir. 2015)).

Wolff did sign the 2010 NDA. This contract, however, focuses on Wolff's distribution of confidential information *to Tomahawk* and protecting that information. Tomahawk makes no argument that under the 2010 NDA Wolff had a reciprocal obligation to maintain confidentiality of Tomahawk's confidential information, nor does the text of the agreement include such a provision. The Court thus grants Wolff's motion for summary judgment against Tomahawk's first counterclaim.

### 2. Breach of Employee Duty of Loyalty

Tomahawk's second counterclaim alleges that Wolff breached the employee duty of loyalty. Tomahawk contends that Oregon law recognizes the duty of loyalty stemming from employment. Tomahawk argues that Wolff breached this duty in disclosing Tomahawk and Formtec's confidential information to third parties Christopher Duggan and, ultimately, a company started by Duggan, Spherical Industries, LLC (Spherical Industries).

The parties did not have an employment contract for Wolff's time as an employee of Tomahawk, although they had a consulting agreement governing some of Wolff's consulting work. Wolff both argues Oregon law and Wisconsin law in discussing Tomahawk's counterclaim. Wolff alleges his employment claims under Oregon law and alleges that he performed his duties for Tomahawk mostly in Oregon. The Court applies Oregon law in considering these cross motions.

The Oregon Supreme Court has explained that "[t]he law is well settled that one of the implied terms of a contract of employment is that the employee will hold sacred any trade secrets

or other confidential information which he acquires in the course of his employment." *McCombs v. McClelland*, 223 Or. 475, 483 (1960) (quoting 165 A.L.R. 1453, 1454 (1946)); *see also Garvin v. Timber Cutters, Inc.*, 61 Or. App. 497, 502 (1983) (stating that there are "duties of faithfulness and loyalty that every employe[e] owes his employer" under an "implied agreement that the common law imposes on every employe[e]");[11] *Lydian Wealth Mgmt. Co. v. Jacob*, 2007 WL 4964427, at *14 (D. Or. Oct. 11, 2007) ("Under Oregon law, every employee owes her employer duties of loyalty and faithfulness."), *report and recommendation adopted*, 2008 WL 220099 (D. Or. Jan. 25, 2008). "The duty of loyalty during the time of employment is distinguishable from any duty not to compete after termination of employment. Even if the employee has no contractual duty after termination, any competing conduct during the time of employment may be a violation of the duty of loyalty." Rothstein, *et al.*, 2 *Employment Law* § 8:12 Duty of Loyalty (6th ed. June 2023 update).

Wolff argues that Tomahawk's counterclaim must fail because Wolff was not employed by Tomahawk at the time of his first and last meetings with Duggan and that at his second meeting with Duggan he did not disclose any confidential information. Wolff also argues that he did not disclose confidential information because he discussed information contained in public patent applications.

---

[11] Where there is "ample evidence" that the plaintiff was in a heightened confidential "fiduciary relationship" with his employer, it may give rise to a "duty of disclosure and fair dealing as to *all matters*." *Williams v. Pilgrim Turkey Packers, Inc.*, 264 Or. 36, 43-44 (1972) (emphasis added). Tomahawk does not make the specific argument, or provide evidence, that Wolff was in such a fiduciary relationship with Tomahawk, and thus Wolff's duty of loyalty as an employee was more limited. *See id.* (explaining that an employee generally is not in a fiduciary relationship with his or her employer as to matters outside the scope of employment but there may be "such a confidential relationship" that the employee has a duty of disclosure and fair dealing for all matters).

The facts relating to this counterclaim are disputed. The parties dispute when Wolff met with Duggan, what was said, whether the information was confidential, and whether the information belonged to Tomahawk or Formtec, or Wolff.[12] Because these and other material facts are disputed, for purposes of Wolff's motion, the Court views the facts in the light most favorable to Tomahawk. Accordingly, the Court denies Wolff's motion. For purposes of Tomahawk's motion, however, the Court views the facts in the light most favorable to Wolff. Accordingly, the Court denies Tomahawk's motion.

## CONCLUSION

The Court DENIES Tomahawk's motion for summary judgment, ECF 249, on its counterclaims. The Court GRANTS IN PART and DENIES IN PART Wolff's motion for summary judgment, ECF 197, against Tomahawk's counterclaims. The Court grants summary judgment in Wolff's favor against Tomahawk's first counterclaim and denies summary judgment

---

[12] Tomahawk argues that the Court should disregard Wolff's declarations submitted with the motions for summary judgment as "sham" affidavits. The sham affidavit rule provides that a party cannot manufacture an issue of fact by presenting an affidavit that contradicts prior deposition testimony. *Van Asdale v. Int'l Game Tech.*, 577 F.3d 989, 998 (9th Cir. 2009). Courts are cautioned, however, that:

> [I]t must be recognized that the sham affidavit rule is in tension with the principle that a court's role in deciding a summary judgment motion is not to make credibility determinations or weigh conflicting evidence. Aggressive invocation of the rule also threatens to ensnare parties who may have simply been confused during their deposition testimony and may encourage gamesmanship by opposing attorneys. We have thus recognized that the sham affidavit rule "should be applied with caution."

*Id.* (quoting *Sch. Dist. No. 1J v. ACandS, Inc.*, 5 F.3d 1255, 1264 (9th Cir. 1993). The sham affidavit rule requires that: (1) a court make a factual finding that an alleged contradiction between a proffered affidavit and prior testimony in fact is a sham; and (2) the contradiction is clear and unambiguous. *Id.* at 998-99; *see also Yeager v. Bowlin*, 693 F.3d 1076, 1080 (9th Cir. 2012). The Court does not find that the sham affidavit rule is met with regard to Wolff's declarations submitted with the pending motions.

against its second counterclaim. The Court DENIES Wolff's motion for partial summary judgment, ECF 291, on his claim for breach of contract. The Court GRANTS IN PART and DENIES IN PART Tomahawk's motion for summary judgment, ECF 164, against Wolff's breach of contract claim, as described in this Opinion and Order.

**IT IS SO ORDERED**.

DATED this 24th day of July, 2024.

/s/ *Michael H. Simon*
Michael H. Simon
United States District Judge