IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| JAMES B. WOLFF, | Case No. 3:21-cv-880-SI |
| Plaintiff, | **ORDER ON MOTIONS IN LIMINE AND PLAINTIFF'S MOTION FOR LEAVE TO AMEND WITNESS LIST** |
| v. | |
| TOMAHAWK MANUFACTURING, INC., | |
| Defendant. | |

**Michael H. Simon, District Judge.**

James B. Wolff ("Wolff") has sued his former employer Tomahawk Manufacturing, Inc. ("Tomahawk"). After the Court's earlier rulings, what remains for trial are five claims asserted by Wolff and one counterclaim asserted by Tomahawk. Wolff's first claim alleges breach of contract. Wolff contends that he and Tomahawk had a non-disclosure agreement ("NDA") under which Tomahawk was required to keep confidential certain information that Wolff provided to Tomahawk relating to "gradient breather plates" and "soft choice/soft fill" and that Tomahawk breached that agreement by disclosing that information to third parties. Wolff's second claim alleges disability discrimination in violation of ORS § 659A.112. Wolff's remaining three claims allege retaliation based on whistleblowing, opposing unlawful practices, and reporting a safety

violation, in violation of ORS § 659A.199, ORS § 659A.030(1)(f), and ORS § 654.062, respectively. Tomahawk asserts one counterclaim against Wolff. Tomahawk alleges that Wolff breached the employee's duty of loyalty owed to an employer. Tomahawk contends that during his employment, Wolff learned certain confidential information that is owned either by Tomahawk or one of its affiliated companies, Formtec, LLC ("Formtec"). Tomahawk contends that Wolff breached his duty of loyalty to Tomahawk by disclosing to third parties the confidential information that Wolff learned while working for Tomahawk.

Before the Court are the parties' motions in limine. For the reasons explained below, the Court grants in part and denies in part the pending motions in limine. Also before the Court is Plaintiff's Motion for Leave to File Amended Combined Lay Witness & Expert Witness Disclosure. The Court grants that motion.

## STANDARDS

A motion in limine, broadly defined, means "any motion, whether made before or during trial, to exclude anticipated prejudicial evidence before the evidence is actually offered." *Luce v. United States*, 469 U.S. 38, 40 n.2 (1984); *United States v. Heller*, 551 F.3d 1108, 1111 (9th Cir. 2009) (stating that a motion in limine is a "procedural mechanism to limit in advance testimony or evidence in a particular area"). As with other motions raised before trial, motions in limine "are useful tools to resolve issues which would otherwise clutter up the trial." *City of Pomona v. SQM N. Am. Corp.*, 866 F.3d 1060, 1070 (9th Cir. 2017) (quotation marks omitted); *see also Luce*, 469 U.S. at 41 n.4 (explaining that a court may rule in limine "pursuant to the district court's inherent authority to manage the course of trials"). Further, "a ruling on a motion in limine is essentially a preliminary opinion that falls entirely within the discretion of the district court. The district court may change its ruling at trial because testimony may bring facts to the

district court's attention that it did not anticipate at the time of its initial ruling." *Pomona*, 866 F.3d at 1070 (quotation marks omitted).

In many instances, however, rulings "should be deferred until trial, so that questions of foundation, relevancy, and potential prejudice may be resolved in proper context." *United States v. Pac. Gas & Elec. Co.*, 178 F. Supp. 3d 927, 941 (N.D. Cal. 2016) (quotation marks omitted). "To exclude evidence on a motion in limine, the evidence must be inadmissible on all potential grounds." *McConnell v. Wal-Mart Stores, Inc.*, 995 F. Supp. 2d 1164, 1167 (D. Nev. 2014) (quotation marks omitted). Thus, denial of a motion in limine to exclude certain evidence does not mean that all evidence contemplated by the motion will be admitted, only that the court is unable to make a comprehensive ruling to exclude the evidence in advance of trial. *Id.* at 1168.

## DISCUSSION

### A. Wolff's Motions in Limine

#### 1. Ownership of Trade Secrets or Confidential Information

RULING: DENIED.

In its counterclaim for breach of an employee's duty of loyalty, Tomahawk alleges that its former employee Wolff disclosed to a third party confidential and trade secret information that Wolff learned as a Tomahawk employee. In his first motion in limine, Wolff argues that the alleged confidential and trade secret information at issue was not owned by Tomahawk. Instead, Wolff contends, that information belonged to a legally distinct affiliate of Tomahawk's, Formtec. Thus, according to Wolff, Tomahawk has not suffered any legally cognizable damage and has no standing to assert this claim. As his first motion in limine, Wolff requests that the Court require Tomahawk to make an offer of proof outside the presence of the jury to show its damages and standing.

Tomahawk responds that the Court previously resolved this issue when it denied Wolff's motion for summary judgment. That motion, however, argued only that Wolff was the owner of the technology at issue. Wolff did not argue in his motion for summary judgment that Formtec, rather than Tomahawk, was the owner. *See, e.g.*, *Wolff v. Tomahawk Mfg.* ("*Wolff II*"), 2024 WL 3540845, at *4 (D. Or. July 24, 2024) ("Wolff moves for partial summary judgment, requesting that the Court: (1) declare that Wolff is the "owner" of particular technology . . . ."). Accordingly, the question now before the Court has not previously been resolved.[1]

Tomahawk's counterclaim alleges that Formtec had the exclusive right to manufacture, use, sell, and license the underlying technology and that Wolff's duties as a Tomahawk employee included working with Formtec to develop applications of that technology. The counterclaim further alleges that "[t]he technology and the intellectual property was owned and controlled by Formtec" and that Formtec used Tomahawk's engineers to assist in product development but paid for their time.

The parties have filed NDAs between Formtec and Tomahawk, but those agreements do not create a license. In its counterclaim, Tomahawk sometimes uses the conjunction "Formtec and Tomahawk" when describing who owns or who was damaged with respect to the trade secrets that Wolff allegedly disclosed to third parties, but taken as a whole, the allegations make clear that Formtec owns the alleged trade secret information. To that extent, the Court agrees with Wolff that Formtec owns the trade secret information and rules that Tomahawk may not

---

[1] Wolff argued in moving against Tomahawk's first counterclaim, breach of contract, that Tomahawk had no standing to bring a claim based on the alleged trade secrets. The Court, however, declined to reach that argument, and granted Wolff's motion on other grounds. *See Wolff II*, 2024 WL 3540845, at *12-13.

argue that it has suffered a loss of any intellectual property that it owns or otherwise step into the shoes of Formtec to claim the loss of the intellectual property at issue.

That Formtec owns the alleged trade secrets, however, does not end the inquiry regarding whether Tomahawk can assert a claim for breach of an employee's duty of loyalty. Although they are legally distinct yet affiliated entities, Formtec was essentially a client of Tomahawk's for services in developing the technology. Tomahawk's access to its client's alleged trade secrets may be confidential information of Tomahawk's. For example, if a law firm gains access to the trade secrets of a client and an employee of that law firm later improperly discloses those trade secrets to a third party, the law firm should be able to sue the employee (or former employee) for breach of the duty of loyalty owed to that law firm as an employer. If Formtec paid Tomahawk for the use of Tomahawk's employee's time and talent, Formtec would have the right to expect that Tomahawk (and its employees) would protect the confidentiality of Formtec's trade secrets learned during that relationship.

Regarding damages, as previously stated, the Court agrees with Wolff that Tomahawk may not claim direct damages from the alleged theft of the intellectual property belonging to Formtec. Tomahawk, however, requests damages only in the form of recovering the wages that it paid to Wolff. Tomahawk seeks as damages Wolff's "total compensation as an employee of Tomahawk, which is estimated at approximately $630,000." In support, Tomahawk cites *Olsen v. Producers Life Insurance Co.*, 250 Or. 517 (1968), for the proposition that lost wages is an appropriate measure of damages for breach of an employee's duty of loyalty.

*Olsen*, however, does not hold that all wages ever paid by an employer to an employee who exhibits disloyalty is the appropriate measure of damages. In *Olsen*, an employee worked at a company from 1958 to June 1964. *Id.* at 518. In the week before resigning, the employee

breached his duty of loyalty. *Id.* The Oregon Supreme Court assumed without deciding that the employee would be otherwise entitled to additional commissions after he resigned based on his compensation package. *Id.* at 519. The court held, however, that the disloyal employee lost his right to that additional compensation based on his disloyal acts. *Id.* The Oregon Supreme Court noted that, based on its prior holdings, when an employee's work contributed to an employer's success, it is not appropriate to disgorge the entire wage of the employee for disloyal acts, particularly when the employee could readily be disgorged of the fruit of his disloyalty. *Id.* at 520-22. The court concluded that because it would be difficult to assess the employer's damages caused by the disloyalty, the trial court's solution of denying the additional commissions was an appropriate solution. *Id.* at 522.[2]

### 2. Evidence Derived from or Related to Wisconsin Arbitration

RULING: DENIED.

The American Arbitration Association conducted an arbitration in Wisconsin between Formtec and Spherical IP, LLC ("Spherical") (the "Wisconsin Arbitration"). In the pending lawsuit, Wolff's attorneys assert that they have not received from Wolff's former attorneys all documents related to the Wisconsin Arbitration that were not originally provided by James Wolff. These documents include, among other things, deposition transcripts, documents produced by Formtec in discovery, and the transcript of the arbitration proceedings. Wolff's counsel argues that the lack of access to these documents unfairly prejudices their ability to prosecute Wolff's claims against Tomahawk and to defend Wolff against Tomahawk's

---

[2] In its proposed jury instructions, Tomahawk cites *Olsen* in support of Tomahawk's request for all wages ever paid to Wolff by Tomahawk. Based on Wolff's long history of employment at Tomahawk, the Court is skeptical that disgorgement of the entirety of Wolff's compensation is the appropriate measure of damage. The Court reserves ruling on this issue until trial, and the parties may provide further briefing on this question.

counterclaim. As his second motion in limine, Wolff requests an order excluding Tomahawk from presenting evidence in this lawsuit that was used, developed in, or otherwise related to the Wisconsin Arbitration. In the alternative, Wolff asks the Court to order Tomahawk or Wolff's former counsel to produce "the entirety of all the proceedings in Wisconsin."

Tomahawk responds that Wolff's current counsel have been representing Wolff for five months and should have requested these documents earlier.[3] Tomahawk also argues that a motion in limine may not substitute for a motion to compel. Tomahawk further states that evidence from the Wisconsin Arbitration has been used in this case for years, attached to filings, attached to *Wolff's* expert reports, and even cited by the Court. Tomahawk also notes that Wolff's former attorney in this case stipulated to the use of evidence received from the Wisconsin Arbitration. After Wolff filed this motion in limine, the Court ordered Wolff's former counsel to produce to Wolff's current counsel all documents from the Wisconsin Arbitration, thereby rendering moot the requested relief of ordering further production. ECF 474.[4] The Court declines to preclude Tomahawk from offering otherwise relevant and admissible evidence.

### 3.  Evidence Produced After Close of Discovery

RULING: DENIED WITH LEAVE TO RENEW.

---

[3] Tomahawk also states that it is "nonsensical for Plaintiff to exclude from evidence materials from the Arbitration, where Plaintiff stipulated the Award is 'final and binding' on him. ECF 134." ECF 452 at 5 n.3; *see also id.* at 11 ("Plaintiff certainly cannot seek to disavow the Arbitration Award that he has already stipulated was 'final and binding' on him (ECF 134)."). As discussed below in the Court's resolution of Tomahawk's Motion in Limine No. 8, the Court already rejected this argument. *See Wolff* II, 2024 WL 3540845, at *2.

[4] The Court ordered Wolff's prior counsel in this lawsuit to provide to Wolff's current counsel "any and all documents related in any way to any of the claims or counterclaims asserted by or against James B. Wolff against or by Tomahawk Manufacturing in this lawsuit. These include but are not limited to all documents related to the Wisconsin arbitration involving Mr. Wolff, Tomahawk Manufacturing, or any of their affiliates." ECF 474.

As his third motion in limine, Wolff moves to preclude Tomahawk from introducing at trial all evidence produced by Tomahawk after the close of discovery. Wolff asserts that Tomahawk has been unfairly producing documents within the last month, well after the close of discovery. Tomahawk responds that it merely has supplemented its production after seeing Wolff's expert reports and learning that additional information was relevant.

Tomahawk has filed its Amended Defendant's Exhibit List, which identifies approximately 170 exhibits that Tomahawk seeks to offer in evidence. In his third motion in limine, Wolff does not identify any specific exhibit that he contends was produced late and would cause unfair prejudice to Wolff. The Court grants Wolff leave to identify any specific exhibit that Tomahawk seeks to offer that Wolff contends was untimely produced and that causes unfair prejudice to Wolff.

**B. Tomahawk's Motions in Limine**

**1. FRE 615 (Rule of Exclusion)**

RULING: GRANTED.

**2. FRE 602 (Personal Knowledge)**

RULING: DENIED WITH LEAVE TO OBJECT AT TRIAL

Any party may timely object at trial that a question calls for an answer not based on personal knowledge or calls for speculation or that an answer is not based on personal knowledge. Relatedly, any party may, when appropriate, ask for leave to ask a question in aid of objection.

**3. Preclude Testimony from Any Witness Not Disclosed on Filed Witness List**

RULING: GRANTED IN PART.

In the Court's Trial Management Order (ECF 354), the Court directed that, among other things, each party list "the names of all lay witnesses to be called" and "for each witness,

state: . . . a fair narrative statement summarizing the substance of the testimony expected to be elicited on direct examination. Do not merely provide the subject matter of the testimony." The Court further directed each party to: "Supply a narrative statement or report of each expert witness to be called at trial (whether in a party's case−in−chief or rebuttal). The narrative statement or report shall . . . summarize in fair detail the substance of any opinions to be expressed by the expert witness, along with the facts, data, and assumptions upon which each opinion is based." The Trial Management Order expressly warns that both lay and expert testimony "will be limited to the material fairly summarized in the witness statement or report, absent a showing of good cause for the omission, balanced against any prejudice to the opposing party."

On May 7, 2025, Wolff timely filed what was labeled as "Plaintiff's Combined Lay Witness & Expert Witness Disclosure." ECF 431. In that filing, Wolff listed the followed lay witnesses: Robert Tournour, Chuck Sweat, Samuel Gannon, Elisabeth Wolff, Andrew Wolff, Brian Kearns, Christopher Duggan, and Will Hardy. *Id.* Wolff also listed the following expert witnesses: Chuck Sweat, Samuel Gannon, Elisabeth Wolff, and Langston Murray. *Id.* In Tomahawk's third motion in limine, Tomahawk states:

> To avoid surprise and prejudice to Tomahawk, Plaintiff should be excluded from introducing any witness who has not been disclosed or identified in Plaintiff's witness list (ECF 431) to testify on Plaintiff's case-in-chief, including Plaintiff James Wolff, and "treating physician" Dr. Mith Leng, as such evidence from witnesses not disclosed on a witness list constitutes unfair surprise and is prohibited by FRE 403 and FRCP 37(c)(1) (party prohibited from using information not provided or witness not identified).

ECF 444 at 5-6. In Plaintiff's Opposition to Defendant's Motion in Limine (ECF 469), Wolff's entire response to Tomahawk's third motion in limine is:

> This is not an intelligible motion in limine, identifying a particular witness of concern, but a generalized and superfluous admonition

> that the parties need to follow the Court's pretrial orders and the
> Federal Rules of Civil Procedure.
>
> "[M]otions in limine must identify the evidence at issue and state
> with specificity why such evidence is inadmissible." (*United States
> v. Lewis*, 498 F.Supp.3d 858, 861 (C.D. Cal. 2020). "The 'failure
> to specify the evidence' that a motion in limine 'seek[s] to exclude
> constitutes a sufficient basis upon which to deny th[e] motion.'"
> (*Id.* at 858.)
>
> As such the motion should be denied.

ECF 469 at 2 (alterations in original). Wolff is mistaken. Defendant's third motion in limine is intelligible and identifies the evidence at issue and states with specificity why such evidence is inadmissible. The Court takes seriously its Trial Management Order (ECF 354) to aid in the orderly management of the trial process.

On May 28, 2025, Wolff filed Plaintiff's Motion for Leave to File Amended Combined Lay Witness & Expert Witness Disclosure. ECF 487. Wolff seeks to add only himself as an additional witness, and he argues both inadvertence and no unfair prejudice. *Id.* Tomahawk objected. ECF 491. As discussed during the final pretrial conference held on June 2, 2025, the Court GRANTS Wolff's motion for leave to file an amended witness list. The Court finds that Plaintiff's failure to include himself was inadvertent and that there will be no unfair prejudice to Tomahawk from allowing Wolff to testify in his case in case. Accordingly, Wolff may testify but Dr. Leng may not.

### 4. Inadmissible Hearsay

RULING: DENIED WITH LEAVE TO OBJECT AT TRIAL.

Any party may timely object at trial that a question calls for inadmissible hearsay or that an answer contains inadmissible hearsay. Relatedly, any party may, when appropriate, ask for leave to ask a question in aid of objection.

**5. Wolff's Dismissed Claims**

RULING: GRANTED.

**6. Missing Written Notices ("Soft Fill/Soft Choice" or "Gradient Breather Plates")**

RULING: DENIED WITH LEAVE TO OBJECT AT TRIAL.

Any party may timely object at trial that a question calls for inadmissible evidence or that an answer contains inadmissible evidence. Relatedly, any party may, when appropriate, ask for leave to ask a question in aid of objection.

**7. Third Formulation of "Soft Fill/Soft Choice"**

RULING: GRANTED IN PART; DEFERRED IN PART.

As its seventh motion in limine, Tomahawk moves to preclude Wolff's expert witnesses from testifying about what constitutes the confidential information at issue to the extent that this testimony is different from what a testifying expert stated in the expert's report or deposition testimony. In the abstract, the Court agrees but will defer any specific rulings until trial.

**8. Evidence Contrary to the Wisconsin Arbitration**

RULING: DENIED.

Tomahawk moves to exclude Wolff from testifying or entering evidence contrary to the Final Arbitration Award entered in the Wisconsin Arbitration. Tomahawk asserts that Wolff stipulated in this federal lawsuit that the Final Arbitration Award is binding on Wolff personally. The Court specifically rejected Tomahawk's argument that Wolff stipulated here that the Wisconsin Arbitration decision was final and binding on Wolff personally. *See Wolff II*, 2024 WL 3540845, at *2 ("Tomahawk first argues that Wolff stipulated in the pending case that the arbitration award is final and binding *on Wolff* and thus he cannot now dispute the arbitrators' conclusions. The Court rejects Tomahawk's argument. On May 19, 2023, Wolff's counsel simply stipulated that the interim award by the arbitrators filed with the Court on September 16,

2022, 'is now final and binding.' ECF 134. Wolff did not stipulate that the award is final and binding *against him personally*." (emphasis in original)). The Court also repeatedly has rejected Tomahawk's arguments that the Wisconsin Arbitration has a preclusive effect in this lawsuit. *See id.* at *2-3; *Wolff v. Tomahawk Mfg.* ("*Wolff I*"), 689 F. Supp. 3d 923, 940-42 (D. Or. 2023).

The Court does not expect to see again any arguments about the preclusive effect of the Wisconsin Arbitration or that its decision is binding on Wolff personally. Further, Tomahawk may not make such representations or arguments to the jury. This ruling, however, does not affect the admissibility under Rule 801(d)(1)(A) under the Federal Rules of Evidence of prior inconsistent statements from testimony given under oath, including statements given at the Wisconsin Arbitration.

### 9.  FOT Technology[5]

RULING: GRANTED.

As its ninth motion in limine, Tomahawk moves to preclude Wolff from arguing that the technology covered by the FOT Agreement is part of this federal trial. Thus, Tomahawk moves to preclude Wolff "from attempting to argue that any designs that create a venturi effect using spherical geometry or any fiber orientation designs are at issue in connection with his remaining claims at trial." ECF 444 at 11. Wolff does not oppose this motion. ECF 469 at 5.

### 10. Whether Cone-Shaped Orifices Creates a Venturi Effect

RULING: DENIED.

Tomahawk moves to exclude evidence contrary to the opinion in the Wisconsin Arbitration regarding what creates a Venturi effect. The Court previously has ruled that the

---

[5] "FOT" refers to "fiber orientation technology." ECF 305-1 at 1.

arbitration decision does not have a preclusive effect in this federal trial. *Wolff I*, 689 F. Supp. 3d at 940-42; *Wolff II*¸ 2024 WL 3540845, at *2-3.

**11. Expert Testimony Regarding Wolff's Disability and Statutory Claims**

RULING: GRANTED IN PART; DEFERRED IN PART.

Wolff may present expert testimony in his case-in-chief only to the extent that the testimony is consistent with each of the following: (1) the Court's ruling on Defendant's motion in limine No. 3; (2) the Court's separately filed ruling on Defendant's *Daubert* motion to exclude expert testimony; and (3) fairly disclosed in the witness's expert report or deposition.

**12. Documents Allegedly Obtained in Violation of the Arbitration Protective Order**

RULING: DENIED.

**13. Expert Testimony that Exceeds Expert Disclosures**

RULING: GRANTED IN PART; DEFERRED IN PART.

As its thirteenth motion in limine, Tomahawk moves to preclude Wolff's expert witnesses from testifying beyond what was fairly disclosed in their expert reports and deposition testimony. In the abstract, the Court agrees but will defer any specific rulings until trial.

**14. Cumulative Expert Testimony on Damages**

RULING: DENIED.

As its fourteenth motion in limine, Tomahawk moves to preclude cumulative expert damage testimony. Wolff responds that he does not intend to offer cumulative testimony. The Court will rule at trial on any objections that evidence is cumulative. The Court notes, however, that in its separate Opinion and Order resolving Tomahawk's *Daubert* motion to exclude Wolff's expert opinions and testimony, the Court has excluded Wolff's proffered damages experts under Rule 702.

### 15. "Entire Market Value" Damages

RULING: DENIED.

The Court will consider this issue as part of its jury instructions analysis, depending on the expert testimony that is allowed and received at trial.

### 16. A "Range" of Damages

RULING: DENIED.

Regarding this issue, the Court will rule on any timely objections raised at trial based on the specific testimony presented, if any, and any specific objections raised.

### 17. Cumulative Expert Testimony on Liability Issues

RULING: DENIED.

As its seventeenth motion in limine, Tomahawk moves to preclude cumulative expert liability testimony. The Court will rule at trial on any objections that evidence is cumulative.

### 18. Telephone Call Recordings (Wolff's Trial Exhibits 4 and 5)

RULING: DENIED.

As its eighteenth motion in limine, Tomahawk moves to preclude Wolff's Trial Exhibits 4 and 5, identified in Plaintiff's Trial Exhibit List (ECF 435). According to Tomahawk, this exhibit contains the recordings and transcriptions of two telephone calls purportedly between Wolff and Tomahawk's outside counsel Phillip Weiss. Tomahawk argues that because neither James Wolff nor Phillip Weiss are listed on Wolff's witness list, neither may give testimony during Wolff's case-in-chief. *See* Tomahawk's Motion in Limine No. 3. Thus, argues Tomahawk, the recording cannot be authenticated.

The Court will defer specific rulings on Wolff's Trial Exhibits 4 and 5 until trial, after Wolff has presented appropriate authentication.

**19. Rules, Regulations, and Restrictions Related to COVID-19**

RULING: DENIED.

The Court will rule at trial on any objections regarding this subject matter.

**20. Expert Testimony from Dr. Brian Kearns—Generally**

RULING: DENIED.

*See* Ruling on Tomahawk's *Daubert* motion to exclude Wolff's expert witnesses. The Court will rule at trial on any objections regarding this subject matter.

**21. Expert Testimony from Dr. Brian Kearns: Post-Thrombotic Syndrome**

RULING: DENIED.

*See* Ruling on Tomahawk's *Daubert* motion to exclude Wolff's expert witnesses. The Court will rule at trial on any objections regarding this subject matter.

**22. Expert Testimony regarding COVID-19**

RULING: DENIED.

*See* Ruling on Tomahawk's *Daubert* motion to exclude Wolff's expert witnesses. The Court will rule at trial on any objections regarding this subject matter.

**23. COVID-19 and the Cargill Plant**

RULING: DENIED.

*See* Ruling on Tomahawk's *Daubert* motion to exclude Wolff's expert witnesses. The Court will rule at trial on any objections regarding this subject matter.

**24. Exposure to COVID-19**

RULING: DENIED.

*See* Ruling on Tomahawk's *Daubert* motion to exclude Wolff's expert witnesses. The Court will rule at trial on any objections regarding this subject matter.

### 25. Whether Anyone at the Cargill Plant Had COVID-19 When Wolff Was There

RULING: DENIED.

Any party may timely object at trial that a question calls for inadmissible evidence or that an answer contains inadmissible evidence. Relatedly, any party may, when appropriate, ask for leave to ask a question in aid of objection.

### 26. Whether a Law, Rule, or Regulation Required a 14-Day Quarantine

RULING: GRANTED IN PART; DEFERRED IN PART.

As a general proposition, only the Court will instruct the jury regarding the contents of a law, rule, or regulation. Absent prior leave of the Court, no witness may testify about the contends of a law, rule, or regulation.

### 27. Whether Tomahawk Violated COVID-19 Safety Protocols

RULING: DENIED.

Any party may timely object at trial that a question calls for inadmissible evidence or that an answer contains inadmissible evidence. Relatedly, any party may, when appropriate, ask for leave to ask a question in aid of objection.

### 28. The Nature of Wolff's Medical Condition

RULING: DENIED.

Any party may timely object at trial that a question calls for inadmissible evidence or that an answer contains inadmissible evidence. Relatedly, any party may, when appropriate, ask for leave to ask a question in aid of objection.

### 29. Testimony from Andrew and Elisabeth Wolff about Wolff's Condition

RULING: DENIED.

Any party may timely object at trial that a question calls for inadmissible evidence or that an answer contains inadmissible evidence. Relatedly, any party may, when appropriate, ask for leave to ask a question in aid of objection.

### 30. Emotional Distress Caused by This Litigation

RULING: DENIED.

As its thirtieth motion in limine, Tomahawk moves to exclude evidence of Wolff's emotional distress caused by this litigation or other litigation involving the parties, either directly or indirectly through their affiliated businesses. Wolff responds that evidence of other lawsuits brought by Tomahawk or its affiliates against Wolff or his affiliates are relevant to show witness bias. The Court will consider that in the context of the evidence when it is offered. Further, any party may timely object at trial that a question calls for inadmissible evidence or that an answer contains inadmissible evidence. Relatedly, any party may, when appropriate, ask for leave to ask a question in aid of objection.

### 31. Punitive Damages

RULING: DENIED.

The Court will consider the issue of punitive damages at trial.

### 32. Adverse Jury Instruction for Spoliation of Evidence

RULING: DEFERRED.

Tomahawk seeks a spoliation adverse inference jury instruction against Wolff. Outside the presence of the jury, Tomahawk may present evidence to the Court of Wolff's spoliation if Tomahawk believes that it can satisfy the requirements of Rule 37(3)(2) of the Federal Rules of Civil Procedure.

**CONCLUSION**

For the reasons explained in this Order, the Court GRANTS IN PART AND DENIES IN PART Plaintiff's Motions in Limine (ECF 427, ECF 428, and ECF 440) and Defendant's Motions in Limine (ECF 444). The Court also GRANTS Plaintiff's Motion for Leave to File Amended Combined Lay Witness & Expert Witness Disclosure (ECF 487).

**IT IS SO ORDERED**.

DATED this 2nd day of June, 2025.

*/s/ Michael H. Simon*
Michael H. Simon
United States District Judge